UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17 CR 82 |
| v. | |
| ALLEN YOUNG | Judge Edmond E. Chang |

## GOVERNMENT'S MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves *in limine* with respect to the following evidentiary matters.[1]

## I.    BACKGROUND

The indictment in this case charges defendant Allen Young with six counts of sex trafficking minors, in violation of 18 U.S.C. § 1591. Specifically, Count One alleges that, from June to December 2014, defendant trafficked Minor A knowing and in reckless disregard of the fact that Minor A was under the age of 18. Counts Two and Three allege that, from mid-2014 to December 2014, and again in June 2016, defendant trafficked Minor B knowing and in reckless disregard of the fact that Minor B was under the age of 18. Count Four alleges that, from 2014 to 2015, defendant trafficked Minor C knowing and in reckless disregard of the fact that Minor C was under the age of 18. Counts Five and Six charge that, at different points in 2014 and

---

[1] The government further moves *instanter* for permission to file this motion, which exceeds 15 pages. This consolidated motion raises multiple distinct issues, each of which could have been filed separately. To avoid repeating facts and for ease of reference, the government has filed these motions in a single filing.

2015, defendant trafficked Minors D and E knowing and in reckless disregard of the fact that they were under the age of 18.

More specifically, the government alleges that defendant operated a sex trafficking business in Chicago, Illinois. As part of that business, defendant recruited and enticed young girls, including Minors A, B, and C, to perform sex acts in exchange for money. Defendant took photographs of the minors, which he and they posted in online advertisements on backpage.com ("backpage") to promote their prostitution. Defendant instructed adult women who worked for him as part of his sex trafficking business to teach the minor victims how to use backpage. At defendant's instruction, the minors answered calls from potential "dates" responding to the advertisements. Both at the homes of the men who called and in hotel rooms in the Chicago area, defendant and others then arranged for the minors to have sex in exchange for money.

Minors A, B, and C, as well as other women and girls, did in fact perform sex acts in exchange for money. Defendant drove Minors A, B, C, and others to dates, waited outside during the dates, and drove them home afterward, demanding either money (from Minors A and C) or sex (from Minor B) in exchange for his services. Regarding Minor D, defendant drove her and Minor A to a date with two men that was arranged via backpage for the purpose of having sex for money. Defendant attempted to recruit Minor E to work for him as a prostitute, and she was present when defendant and other prostitutes posted advertisements on backpage.

Defendant knew the girls performing sex acts on his behalf were underage: not only was defendant told the girls were underage, but based on the girls' appearance alone, he should have known they were minors.

Trial is scheduled for January 22, 2018.

## II. THE COURT SHOULD ADMIT AS DIRECT EVIDENCE TESTIMONY ABOUT THE INVOLVEMENT OF ADULTS IN THE MINOR VICTIMS' TRAFFICKING.

The government's evidence in this case may include testimony and evidence about the involvement of women who worked for and/or were trafficked by defendant (other than the victims who are the subject of the charged counts), including those who helped train the minor victims who were working for defendant. For example, the government anticipates that Minor A will testify that defendant introduced her to Individual A and that, at defendant's direction, Individual A explained how the business worked. Individual A showed Minor A the photos she had used in one of her advertisements, instructed Minor A about how to talk sexy and soft on the phone, and told Minor A what to say in order to set up "dates," during which Minor A would perform sex acts in exchange for money. The government anticipates that Individual A will testify that she worked for defendant as a prostitute and that she observed defendant's relationships with minors, including Minor B.

Minor A also is anticipated to testify about meeting Individual B, whom defendant instructed to show Minor A how to use backpage, including how to move through the website, and how to post ads. Minor C, likewise, is anticipated to testify that, during defendant's initial recruitment of her, defendant drove her to dates along with others, including Individual B.

3

The proposed evidence about women who were part of defendant's sex trafficking business (but who are not minors and are not the subject of counts of the indictment) directly relates to the crimes defendant is charged with in this case. The Seventh Circuit addressed the admissibility of similar evidence in *United States v. Carson*, 870 F.3d 584, 598–600 (7th Cir. 2017). The government sought the admission of, and the district court admitted at trial, testimony from women who were not victims of the trafficking crimes charged in the case but who explained how the defendant's trafficking business operated. For example, one woman testified that she drove other women to dates; other women testified that they were present when various parts of the charged crimes occurred, including because the defendant posted similar advertisements for their services on backpage, or because the defendant drove them to dates together. The Seventh Circuit held that this was "direct evidence of the crime."[2] *Id.* at 599-600. It explained:

> For example, the description of the other woman, Katie Smego, in the hotel room when Fratto met Carson is not evidence of another bad act, but merely a description of the scene into which Fratto arrived. It would be odd for Fratto to testify about her first encounter with Carson and not be able to describe who else was in the room when the crime had its genesis. And it is directly relevant to the charged crime because, as Dr.

[2] "[D]irect evidence of a crime is almost always admissible against a defendant." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010); *see also United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015) ("Rule 404(b) does not apply to direct evidence of the crime charged") (citing *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) and *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009)); *United States v. Vani*, Case No. 13 CR 167, Dkt. No. 94 (N.D. Ill. March, 25, 2014) ("If evidence relates to acts 'concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime,' it is not evidence of 'other' acts, as Rule 404(b) uses the term.") (quoting *United States v. Holt*, 460 F.3d 934, 937 (7th Cir. 2006)). Direct evidence is still subject to evaluation under Federal Rule of Evidence 403. *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011).

Cooper testified, sex traffickers often use other women of the same approximate age and background as grooming tools to help coerce a victim into joining the trafficking enterprise. This is not, therefore, another bad act, but rather part and parcel of the crime at issue. Likewise, Fratto's description of taking provocative pictures with Smego is direct evidence of the crime for which Carson was charged—sex trafficking an underage Fratto.

Similarly, the testimony from the driver, Margaret Hurley, established that she was present when the women (and in at least one case, a girl) were paid and then handed their money over to Carson, and that she was present when some of the women were beaten. Her testimony was direct evidence of the crime. That it may have tangentially mentioned driving other women who were not named victims in the course of driving the named victims is of no moment, and certainly if it was prejudicial, it was well within the realm of discretion for the district court judge to admit it after balancing the probative value against the risk of prejudice. The fact of the matter is that Carson ran a sex-trafficking business with many women in his grasp. It would be near to impossible to describe any of the operations involving the named victims without mentioning the other women who were in the same hotel rooms at the same time, whose advertisements ran alongside those of the named victims, who were being driven to and from the commercial sex transactions by the same driver at the same time, and who either watched the physical, emotional and sexual abuse of the victims or were watched by them while being abused.

*Id.*

The same holding allows the introduction of the government's proposed evidence in this case. The government's evidence about the involvement of persons other than the minor victims will explain how defendant's sex trafficking business operated, including how defendant: recruited and groomed the victims to engage in sex acts for money; solicited customers, or "Johns," by posting advertisements on backpage; facilitated and arranged "dates" between the victims and customers; managed the pricing structure and expected payment for the sex acts; and supplied the victims with cell phones, condoms, toiletries, and other items to use during and

after the sex acts. Evidence and testimony concerning the overall business is necessary for the jury to understand how defendant's business worked and, in turn, how the victims were trafficked.

## III. THE COURT SHOULD ADMIT AS DIRECT EVIDENCE TESTIMONY ABOUT DEFENDANT'S SEX ACTS WITH MINORS.

The government plans to introduce testimony about the different forms of payment defendant received for his facilitation of minor victims' prostitution. From some minor victims, defendant demanded sex as payment for housing and rides to dates (Minor B). From other minor victims, defendant required the minors to pay him a portion of the cash they received from other men for sex acts (Minors A and C). For both sets of minor victims, at times, defendant paid the minors to have sex with him (Minors A and B).

Testimony and evidence about the benefits received by defendant, including sex, is part of proving defendant committed violations of § 1591. One theory of liability under § 1591 is that defendant "benefitted financially or by receiving anything of value" from a venture engaged in commercial sex trafficking. Sex is a thing of value. *United States v. Cook*, 782 F.3d 983, 988 (8th Cir. 2015). Defendant benefitted by receiving sex from Minors A and B as part of his commercial sex trafficking business. *See United States v. Williams*, 564 F. App'x 568, 574 (11th Cir. 2014) ("the testimony proffered at trial that Williams provided his minor victims with drugs and engaged in sexual intercourse with at least two of them is inextricably linked with the charged misconduct of sex trafficking of a minor").

**IV.** **THE COURT SHOULD ADMIT EVIDENCE OF MINOR C'S WORK FOR DEFENDANT AS EVIDENCE OF DEFENDANT'S IDENTITY, PURSUANT TO RULE 404(B).**

The government intends to introduce evidence of Minor A's involvement in defendant's sex trafficking business after she was trafficked. The government anticipates Minor A will testify that, beginning in December 2014 when she became pregnant (at age 16), defendant asked Minor A to work for him by posting ads, depicting other girls, on backpage.com. The government expects that Minor A will testify that she posted the ads defendant told her to post on backpage.com for several months, in exchange for payment. Defendant instructed Minor A when to post ads; provided her with the content of and photos for the ads; and gave Minor A his login information for backpage.com. The government intends to introduce as an exhibit text messages between Minor A and defendant in which defendant (using a phone number known to be used by defendant) dictated the content of the ads, sent Minor A the photos to use in the ads, and gave Minor A his credit card numbers to pay for the ads.

Federal Rule of Evidence 404(b) permits the use of evidence of other crimes, wrongs, or acts to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b); *United States v. Gomez*, 763 F.3d 845, 852 (7th Cir. 2014). Before it will be admitted over an opponent's objection, the other-act evidence's relevance to a purpose other than the person's character or propensity to behave in a certain way must be "established by 'some propensity-free chain of reasoning.'" *Ferrell*, 816 F.3d at 444 (quoting *Gomez*, 763 F.3d at 856, 860). Once the proponent of the evidence makes this

showing, then the court "must engage in Rule 403 balancing to determine whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice." *Id.*

Here, defendant's use of Minor A to post backpage advertisements for him is evidence of defendant's identity and intent. Post-arrest, defendant told agents that he knew Minor A, knew that Minor A was under the age of 18 years old, and had met her as part of a church program. Defendant denied posting Minor A and others on backpage. In light of this, the evidence of defendant using Minor A as part of his commercial sex business is highly relevant non-propensity evidence. The fact that defendant paid Minor A to post ads on backpage as part of his business, and the text messages that clearly establish defendant's knowledge of and use of backpage, is circumstantial evidence that it was defendant (and not someone else) who facilitated Minor A's trafficking. It is reasonable to infer from the text messages that the sender of the text messages (defendant) believed that the recipient (Minor A) had used backpage previously and was familiar enough with the website that she could post ads for defendant's other women. *Cf. United States v. Ortega*, 478 F. App'x 871, 875 (5th Cir. 2012) (text messages seeking to purchase illegal narcotics were admissible under Rule 404(b) because the "evidence demonstrated not only that the sender of the text messages sought to purchase illegal narcotics, but also that the sender of the text messages believed that the recipient, Ortega, possessed illegal narcotics").

The probative value of this proposed evidence, as well as the direct evidence discussed in the prior two sections, is not substantially outweighed by the risk of

unfair prejudice. "The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quotation omitted). While the proffered evidence certainly is damaging to defendant, it is not unfairly prejudicial. *See United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) ("most relevant evidence is, by its very nature, prejudicial, . . . [but] evidence must be *unfairly* prejudicial to be excluded"). The evidence puts into context for the jury the manner and method in which the charged victims were trafficked. It explains the relationship between the minors and defendant, including the nature of their relationships, how defendant used them as part of his larger operation, and his knowledge and intent.

Any potential prejudice to defendant could be cured by giving the jury a limiting instruction regarding the use of this evidence, which will help "in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." *United States v. Clark*, 774 F.3d 1108, 1116 (7th Cir. 2014); *see also Gomez*, 763 F.3d at 860-61.

## V. DEFENDANT SHOULD BE PRECLUDED FROM OFFERING SELF-SERVING OUT-OF-COURT STATEMENTS.

On February 13, 2017, defendant was interviewed by law enforcement for approximately two and a half hours. During that interview, defendant admitted to living at addresses in Oak Park and Chicago linked to the charged conduct, and to his use of the telephone number ending in -0391. Defendant admitted to knowing two young girls who, based on the nicknames and descriptions defendant provided, the

government believes to be Minors A and B, and that they came and went from the basement of his home in Oak Park. He further explained that he knew Minors A and B were both under age 18 when he met them several years before his meeting with law enforcement. Finally, defendant admitted to knowing how to use backpage.com. He explained that he wrote advertisements with the right wording to attract customers, taught others how to use backpage, and allowed "girls" to use his phone to post ads.

The government seeks to admit at trial the incriminating statements made by defendant, including his admissions that he knew Minors A and B and that they were younger than age 18.[3] These statements are admissible as statements of a party-opponent under Rule 801(d)(2). The government has provided defense counsel with draft transcripts of the portions of defendant's statement it seeks to admit.

As a general matter, however, any out-of-court statement offered by a defendant is inadmissible unless defendant can show that the statement is offered for a relevant, non-hearsay purpose or falls within a clearly defined hearsay exception. *See Fenje v. Field*, 301 F. Supp. 2d 781, 810 (N.D. Ill. 2003). Accordingly, a party may not introduce his own self-serving statements. *See, e.g.*, *United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) ("[T]he Davenports' statements, to the extent exculpatory, would not have been admissible at their trial; they would have

---

[3] The government might also introduce certain of defendant's statements to show they are false. *United States v. Rose*, 12 F.3d 1414, 1421 (7th Cir. 1994) (affirming government's admission of defendant's false exculpatory statements to a law enforcement officer as proof of consciousness of guilt; "it has been firmly established that false exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force.") (quotation omitted).

been hearsay statements not coming within any of the exceptions to the hearsay rule."); *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998) (agent's report of defendant's interview "was really nothing more than a self-serving statement by [defendant], inadmissible under the rules against hearsay"); *United States v. Chard*, 115 F.3d 631, 635 (8th Cir. 1997) (same); *United States v. Ortega* 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, *see* Fed. R. Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay.").

However, in limited circumstances, self-serving hearsay statements of a defendant are admissible under the rule of completeness doctrine. When determining admissibility, a trial court first has to determine whether the hearsay statements are relevant to the case. *See, e.g., United States v. Velasco*, 953 F.2d 1467, 1476-76 (7th Cir. 1992) (citing with approval *United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985) where the district court excluded a defendant's explanation about the religious motivations for committing the criminal acts, as those motivations did not constitute a valid defense to the crimes charged). If the court determines the self-serving statements are relevant, the court must then determine whether or not the statements "1) explain the admitted evidence, 2) place the admitted portions in context, 3) avoid misleading the trier of fact, and 4) insure fair and impartial understanding of the evidence." *Velasco*, 953 F.2d at 1475. So that the Court can make the appropriate rulings outside the presence of the jury, defense counsel should identify the portions of defendant's statement it seeks to admit.

## VI. FORMS OF ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION ARE INADMISSIBLE.

The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quotation omitted); *United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012) (district court properly excluded evidence regarding prior lenient treatment enjoyed by illegal reentry defendant as irrelevant and potentially inviting of nullification). Accordingly, the government requests that the Court enter an order precluding defendant from arguing that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification. Although the government cannot anticipate each form of potential jury nullification argument or evidence, the government moves to exclude the areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

### A. Penalties Faced by the Defendant Should Be Inadmissible.

The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *See, e.g.*, *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), overturned on other grounds, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are

improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g.*, *Shannon v. United States*, 114 S. Ct. 2419, 2424 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same). Mention of the potential penalties faced by defendant – including possible imprisonment, restitution, or fines – would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction on and, ultimately, nullification.

### B. Arguments or Questioning Regarding the Government's Charging Decisions Should Be Precluded.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral." *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). More specifically, evidence concerning whether and why certain individuals were charged or not charged is irrelevant to the question of defendant's guilt. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (where defendant claimed he did not knowingly participate in drug transaction, "[w]hether or not [co-arrestee] was criminally charged does not make the facts relating to [defendant's] knowledge and participation in the attempted purchase more or less probable") (citing Fed. R. Evid. 401); *United States v. Mosky*, No. 89 CR 669, 1990 WL 70832, at *1 (N.D. Ill. May 7, 1990) ("The government seeks to bar only any reference to its

decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants.").

Further, inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g.*, *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"). To that end, defendant should be precluded from arguing that the investigation or prosecution was racially motivated. "Appeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990). Not only is there no evidentiary basis for interjecting into this trial allegations of racial animus, but also the law is well-settled that claims of selective prosecution are to be resolved by the court and not the jury. *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) ("[S]elective prosecution defense . . . is an issue for the court rather than the jury.").

## C. Argument or Evidence of Outrageous Government Conduct Should Be Precluded.

The government moves to preclude defendant from presenting arguments or evidence concerning allegations of governmental misconduct and/or outrageous government conduct. Because claims of alleged misconduct on the part of the prosecutor or investigating agents are irrelevant to the merits of the case, suggesting

to the jury that alleged misconduct provides a basis for acquittal is an invitation for the jury to nullify.

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Westmoreland*, 712 F.3d 1066, 1071 (7th Cir. 2013) (the outrageous government conduct defense is "disallowed" in the Seventh Circuit; *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008) (same). Second, the issue of government misconduct is a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that "outrageous government conduct" is not a jury question) (citations omitted); *United States v. Boyd*, 55 F.3d 239, 241 42 (7th Cir. 1995) ("outrageous government conduct" is no defense to a criminal charge). Accordingly, defendant should be precluded from attempting to defend this case by attacking the propriety of the government's conduct.

### D.    Ignorance of the Law

The Court should preclude any evidence or argument regarding defendant's knowledge or lack of knowledge about the age of consent. "Ignorance of the law is no defense." *United States v. Dean*, 705 F.3d 745, 748 (7th Cir. 2013) (citations omitted). Nothing in 18 U.S.C. § 1591(a) requires defendant to know it was a crime to prostitute individuals under the age of 18. Rather, § 1591(a) only requires that defendant acted

knowingly or in reckless disregard with respect to the age of the minor victims. This general *mens rea* requirement of knowledge does not encompass knowledge of illegality.

## VII. THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT CONCERNING LAWFULNESS AND NON-CORRUPT CONDUCT.

The government moves to preclude defendant from presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Rule 405(a).[4] In an effort to distract the jury from the charges at issue, defendant may seek to admit evidence and testimony that, on prior occasions, he acted in a lawful manner. Or he may argue that because he performed good acts during his life, he could not have committed the charged offenses. "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) (upholding exclusion of evidence that defendants met

---

[4] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

regularly and did not discuss criminal activity; "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." ); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) (concluding that "evidence of specific lawful acts of Defendants is not properly introduced to show that Defendants did not have the requisite intent to commit the crimes charged"). In particular, the fact that defendant may not have trafficked certain females, for example, is not proof that defendant did not traffic the minor victims named in the indictment. Similarly, evidence that defendant committed specific instances of good conduct or lawful conduct are not proof that he did not commit the charged conduct.

## VIII. THE COURT SHOULD BAR ALLEGATIONS OF WITNESS WRONGDOING NOT RESULTING IN A CONVICTION AND NOT INVOLVING DISHONESTY.

The government has disclosed to defendant the criminal histories of the witnesses it may call at trial. Several witnesses have arrests that did not result in convictions[5] and misdemeanor convictions. These arrests and misdemeanor convictions are not admissible under Rule 403, Rule 608(b), or Rule 609.

### A.    Arrests or Conduct Not Resulting in Conviction.

By its express terms, Rule 609 permits evidence only of convictions, not arrests.[6] Any marginal relevance of such arrests is substantially outweighed by the

---

[5] Minors A, B, C, D, and E, all have arrests that did not result in convictions for crimes such as battery, retail theft, and assault. Many of these arrests are juvenile arrests.

[6] More specifically, Rule 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was

risk of unfair prejudice, confusion of the issues, and misleading the jury. If the jury is presented with references to or evidence of the witness's arrests, the jury may improperly conclude that: (a) it need not give the same weight to the witness's testimony as it would to witnesses who have not been arrested; (b) the victims were convicted of/guilty of the crimes for which they were arrested; or (c) that the victims were not in fact victims because they have criminal histories. Any of these conclusions would be improper and would cause undue prejudice to the government's case.

Nor are arrests or ramifications short of conviction admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness. Courts have construed Rule 608(b) to restrict cross-examination on prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. *See Cruz v. Safford*, 579 F.3d 840, 844-45 (7th Cir. 2009) (upholding exclusion of prior arrests because they had no bearing on truthfulness); *United States v. Mitchell*, 502 F.3d 931, 967 (9th Cir. 2007) (upholding exclusion of prior theft, not resulting in a conviction, because it has no bearing on truthfulness); *United States v. McCarroll*, No. 95 CR 48, 1996 WL 99442, at *12 (N.D. Ill. Mar. 4, 1996) (excluding arrests for battery and theft and stating that, "[i]n general, arrests and charges which did not lead to a conviction cannot be used for impeachment."). Even then, defendant should be limited to inquiring only about the specific conduct

---

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted. . . ." Fed. R. Evid. 609.

that relates to truthfulness, and should not be permitted to elicit that the witness was arrested for such conduct. *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 626 n.7 (7th Cir. 2003).

### B.    Misdemeanor and Juvenile Convictions.

Similarly, the Court should preclude cross-examination regarding misdemeanor and juvenile convictions of the witnesses that are not probative of truthfulness.[7] Rule 609(a)(2) allows the party to impeach a witness using a misdemeanor conviction, but only if "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Even then, these past instances may not be proved by extrinsic evidence. See Fed. R. Evid. 608(b). Under Rule 608(b), the defense also may impeach the witness using a misdemeanor conviction, but again, only if the specific acts in question are "probative of the [witness's] character for truthfulness or untruthfulness." The Advisory Committee Notes explain that Rule 609(a)(2) is generally limited to "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretenses," and similar crimes.

Likewise, Rule 609(d) explains a more stringent requirement for the use of juvenile convictions. Such a conviction is admissible only if "an adult's conviction for that offense would be admissible to attack the adult's credibility" and "admitting the evidence is necessary to fairly determine guilt or innocence." *United States v. Hines*,

---

[7] Government witness Charlie Harris has misdemeanor convictions for assault and resisting a peace officer. Minor C has a juvenile conviction for aggravated battery in a public place, and government witness Raven Aikens has juvenile convictions for aggravated robbery.

398 F.3d 713, 716 (6th Cir. 2005); *United States v. Williams*, 963 F.2d 1337, 1341 (10th Cir. 1992).

### C. Other "Bad" Acts.

Cross-examination regarding prior bad acts that are not probative of truthfulness also should be barred pursuant to Rule 608(b) and Rule 611, as well as Rule 403. As noted above, pursuant to Rule 608(b) of the Federal Rules of Evidence, "except for criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *See also* Fed. R. Evid. 611 ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."). In addition to causing prejudice, cross-examination of this type may also confuse the issues or mislead the jury, as well as cause delay. Fed. R. Evid. 403.

Consistent with the Federal Rules of Criminal Procedure and past precedent, courts have excluded cross-examination into prior alleged bad acts of witnesses, including even allegations of violence. *See, e.g., United States v. Holt,* 486 F.3d 997, 1001-02 (7th Cir. 2007) (defendant correctly prohibited from cross-examining an officer based on his thirty-day suspension from police force for conduct not relevant to issue of truthfulness); *United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (court "correctly refused" to let defendant cross-examine a witness regarding his oversight in failure to register a gun because it did not "implicate fraud, deceit, or dishonesty."); *United States v. Henderson*, No. 11 CR 74, 2012 WL 698796, at *2 (N.D. Ill. Mar. 1, 2012); *United States v. Tate*, 633 F.3d 624 (8th Cir. 2011) (disallowing

allegation of assault as "not probative of [the witness]'s character for truthfulness");

*United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (evidence of

witness's involvement in drug operation not proper impeachment under Rule 608(b));

*United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("[W]hether or not [the

witness] ever sold drugs is not probative of his truthfulness[.]").

So that the Court can make the appropriate rulings, before a witness testifies, and outside the presence of the jury, defense counsel should identify the prior "bad acts" about which they intend to cross examine a given witness and demonstrate how that conduct is probative of truthfulness. This procedure will ensure that any alleged bad acts are not improperly communicated to the jury before the Court has the opportunity to determine whether such alleged bad acts are the subject of proper impeachment.

## IX. THE COURT SHOULD PRECLUDE THE DEFENSE FROM QUESTIONING THE GOVERNMENT'S PROPOSED EXPERT, SPECIAL AGENT LANDAU, ABOUT THE DEFENSE'S MOTION FOR MISTRIAL IN A PRIOR TRIAL

The government has disclosed as an expert FBI Special Agent Carrie Landau, whom the government anticipates will testify about the subculture of sex trafficking; common dynamics between sex traffickers and their victims; typical means sex traffickers use to target, recruit, and maintain victims; and contributing factors that can make certain victims more susceptible to influence by sex traffickers.

As the government has disclosed to the defense, Special Agent Landau testified as an expert on these topics in 2017 at a trial in the U.S. District Court for the Northern District of Indiana (*United States v. Cosby*). After Special Agent Landau's testimony, the defense moved for a mistrial, alleging that the agent had

misrepresented her role in the case by testifying that she did not participate in the case's investigation. The defense pointed to a document in the case file that indicated that the agent had facilitated the introduction of the case agent to a representative of a Howard Johnson motel. To resolve the motion for mistrial, the district court heard additional testimony from Special Agent Landau outside of the presence of the jury. Special Agent Landau testified that she did facilitate the introduction of the case agent to a representative of the motel, but that she did not know what case it was related to and had no substantive knowledge of the investigation. The court noted that Special Agent Landau's prior testimony may have been incorrect, insofar as she had stated that she had no participation in the investigation, but it was not intended to mislead the jury. The court therefore denied the motion for mistrial.

Federal Rule of Evidence 608(b) permits cross-examination (though not extrinsic evidence) regarding specific instances of prior conduct that did not result in conviction but are probative of the witness's character (or propensity) for untruthfulness. The alleged inconsistency between the agent's testimony in the *Cosby* case and the case document that showed that she facilitated an introduction to a motel representative is not probative of her truthfulness. *See, e.g.*, *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (inconsistency between affidavit and agent testimony is not reckless disregard of the truth). The district court in the *Cosby* case did not make a finding that the agent had perjured herself, or that she was untruthful; it simply found that there was a potential inconsistency (i.e., imprecision) between her earlier and later testimony. To allow the defense the opportunity to

question the agent about this issue in this case would be improper. The alleged contradiction is irrelevant and collateral to this trial. *Taylor v. Nat'l R.R. Passenger Corp.,* 920 F.2d 1372, 1375 (7th Cir. 1990) ("The rule in this circuit is that a witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross-examination." (internal marks omitted)).

## X. THE COURT SHOULD PERMIT THE GOVERNMENT TO IMPEACH DEFENDANT WITH HIS PRIOR FELONY CONVICTION IF HE TESTIFIES.

Should the defendant decide to testify, the government seeks pursuant to Rule 609 to impeach defendant with his prior felony conviction within the last 10 years.[8] On June 10, 2011, defendant was sentenced to 24 months' probation for possession of cocaine in the Circuit Court of Cook County. As set forth below, given the importance of defendant's credibility to the jury's assessment of the evidence, the probative value of the conviction outweighs any prejudice, and evidence of the conviction "must be admitted" under Rule 609(a)(1)(B).

The Federal Rules of Evidence generally bar the use of extrinsic evidence to attack a witness's character for truthfulness. Rule 609(a) carves out one exception for evidence of certain criminal convictions. Where the witness is a defendant, evidence of that defendant's past felony convictions must be admitted (1) if the court determines that the probative value of the evidence outweighs its prejudicial effect to the defendant and (2) the conviction is less than 10-years old. The 10-year clock

---

[8] The government does not seek to impeach defendant with his 25-year-old conviction for conspiracy to distribute a controlled substance, given that "the purpose of Rule 609 is to ensure that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) (citations omitted).

starts at the "witness's release from any physical confinement, or in the absence of confinement, the date of conviction," and it ends upon "the start of the trial at which the witness is testifying." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008).

Courts in this circuit use a five-part balancing test to determine whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See, e.g.*, *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (citations omitted). These factors are merely a guide to the trial court's exercise of its wide discretion. *Id.*

Here, the fourth and fifth factors strongly favor admission. If defendant testifies, his credibility will be a central issue at trial. The government's primary evidence will consist of testimony from the victims of defendant's sex trafficking. If defendant takes the stand and denies engaging in sex trafficking, or suggests that the witnesses are lying, the trial will pit the word of defendant against the word of the witnesses.

Where "conflicting accounts" are offered by the defendant and the government's witnesses, the credibility of the defendant becomes the central issue in the trial. *Montgomery*, 390 F.3d at 1016. The Seventh Circuit has repeatedly affirmed the use of impeachment by prior convictions in cases in which the defendant's credibility is an important issue at trial. *See, e.g.*, *id.* at 1015-16 (no abuse of

discretion where defendant impeached on prior drug possession convictions, in part because credibility was "crux of the case in light of conflicting testimony about" defendant's post-arrest statements about the gun); *United States v. Gant*, 396 F.3d 906, 909-10 (7th Cir. 2005) (holding that given defendant's theory that he possessed a pipe, not a gun, his credibility was crucial and therefore, impeachment with 8-year-old drug conviction was proper); *United States v. Nurudin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (similar).

The first and second factors likewise favor admission because defendant's conviction has impeachment value, is easily proven via certified court records, and occurred recently. The government recognizes that defendant's prior felony conviction did not on its face involve a dishonest act or false statement. But that does not mean it has no impeachment value. Rule 609(a) is premised on the idea that recent felony convictions are relevant to credibility, and the Seventh Circuit has observed that *any* prior felony conviction diminishes a witness's credibility:

> The rationale for . . . allowing a prior crime to be used to undermine testimony is that a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime. The rationale is underinclusive, since many people who have committed a felony have not been caught or if caught have not been convicted, because of the prosecution's heavy burden of proof. Moreover, every judge is aware that many people who do not have a criminal record will lie in a trial when it is to their advantage.

*Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627-28 (7th Cir. 2009). As the conviction speaks strongly to defendant's incentive for truth telling and his respect

for the oath administered by this court, admission of his conviction is appropriate to allow the jurors to evaluate his credibility.

Finally, to further reduce any propensity risk, the government proposes a limiting instruction directing the jury to only consider the conviction in deciding the believability of defendant's testimony, and not to consider it as evidence of the charged crimes or for any other purpose. *See Montgomery*, 390 F.3d at 1016 (finding that limiting instruction mitigated prejudicial impact of prior drug convictions admitted for impeachment in felon-in-possession case); *see* Seventh Cir. Pattern Jury Instruction 3.06 (2012) ("Impeachment by Prior Conviction").

## XI. DISCOVERY REQUESTS OR COMMENTARY IN THE PRESENCE OF THE JURY ARE IMPROPER.

Commentary regarding discovery, including discovery disputes and requests, should not be made in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. In fact, as often happens, counsel's requests are ill-founded because the discovery already has been tendered or is not subject to disclosure. In any event, these requests can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government moves the Court to order that requests for discovery or comments relating to discovery be made outside the presence of the jury. *See, e.g.*, *United States v. Gray*, No. 07 CR 166, 2010 WL 1258169, at *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to

preclude the defense from requesting or commenting on discovery in the presence of the jury).

## XII. ARGUMENT ABOUT MISSING WITNESSES IS IMPROPER.

It is within the Court's discretion to prohibit argument concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). Indeed, "when the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). At this point in time, there is no witness who defendant has asserted is unavailable. Therefore, the government requests that the Court prohibit defendant from introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify.

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. Ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392-93. Once the subject is opened by the defense, it is permissible for the government to respond. *Id*. at 1394. As the Seventh Circuit explained in *Sblendorio*, "[t]he jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the evidence." *Id*. at 1393-94.

XIII. **MOTION TO PRECLUDE EVIDENCE OR ARGUMENTS ALLEGING ALIBI, UNAVAILABILITY, OR MENTAL DEFECT.**

Under the Federal Rules of Criminal Procedure, a defendant is required to provide the government with notice of: any alibi or similar defense a defendant intends to raise, including any defense asserting the defendant's unavailability on or near the dates named in the indictment (Rule 12.1); or notice of any defense to be raised of a mental defect inconsistent with the state of mind required for the offense charged (Rule 12.2). Because defendant has not notified the government of his intent to raise any such defense, the government requests that defendant be prohibited from introducing evidence or argument of such defenses at trial.

XIV. **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court grant the government's motions *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    *s/ Christine M. O'Neill*
ANDRIANNA D. KASTANEK
CHRISTINE M. O'NEILL
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300