UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17 CR 82 |
| v. | |
| | Judge Edmond E. Chang |
| ALLEN YOUNG | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully responds to the motions in limine filed by defendant Allen Young.[1]

## I. BACKGROUND

The indictment in this case charges defendant Allen Young with six counts of trafficking or attempting to traffic minors, in violation of 18 U.S.C. § 1591. The specific allegations and facts of the case are further detailed in the government's motions *in limine*. R. 76. Trial is scheduled for January 22, 2018.

## II. THE COURT SHOULD DENY, IN PART, DEFENDANT'S MOTION TO ADMIT DRUG USE BY WITNESSES

Defendant seeks to admit past and present use of drugs by government witnesses. R. 71. His request sweeps too broadly.

Evidence of a witness' drug use may be admitted where it relates to a possible inability to recollect and relate. *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir.

---

[1] The government further moves *instanter* for permission to file this motion, which exceeds 15 pages. This consolidated response addresses multiple motions filed separately by defendant, which collectively exceeded 15 pages. For ease of reference, the government has consolidated its responses in a single filing.

2007); *United States v. Neely,* 980 F.2d 1074, 1081 (7th Cir. 1992) (case law "forbid[s]" character attacks based on the "suggest [ion] . . . that people who have used drugs are more likely to tell lies"). For example, where a witness's mental capacity is directly at issue and the defense has proffered evidence that the witness was under the influence of drugs during the relevant events, affecting her ability to recall those events, the defense may cross-examine the witness about her drug use. *Gallardo*, 497 F.3d at 733.

But there is "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." *United States v. Cameron,* 814 F.2d 403, 405 (7th Cir. 1987). As a result, if there is no reason to believe that drug use affected the witness's ability to recall— for example, because the timing of the drug use does not coincide with the relevant events—then the defense is not permitted to cross-examine the witness about it. *Gallardo*, 497 F.3d at 733 (witness's drug use is inadmissible if "the evidence is offered solely as a general character attack").

While the defense would be permitted to impeach based on drug use a witness who was abusing drugs at the time she witnessed the events about which she will be testifying, the defense should not be permitted to ask Minor D about her drug use. The government has disclosed to the defense that, on a date she initially was scheduled to testify in the grand jury, the government observed that Minor D appeared to have smoked marijuana. Minor D admitted that she had. The government rescheduled her grand jury testimony. On the date that Minor D did

actually testify in the grand jury, she was sober. There is no evidence and no reason to believe that Minor D was under the influence of drugs during her interactions with defendant, and it would be pure speculation to say that prior drug use had affected Minor D's ability to recall particular events. *Gallardo*, 497 F.3d at 733.

## III. THE COURT SHOULD DENY DEFENDANT'S MOTION TO ADMIT EVIDENCE OF MINOR B'S BIPOLAR DISORDER

Defendant argues that evidence of Minor B's bipolar disorder diagnosis should be admitted to impeach Minor B's credibility. In support of his argument, defendant states that Minor B's diagnosis calls into question her ability to accurately perceive and recall events. The government opposes defendant's motion.

In considering whether to allow impeachment based on mental deficiency or defect, the Court should consider the nature of the alleged psychological condition, including whether it affected the witness' ability to perceive and remember events, and whether the witness suffered from the condition at the time of the events to which the witness will testify. *See United States v. Love*, 329 F.3d 981, 984 (8th Cir. 2003); *Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000); *see also United States v. Garcia*, 86 F. App'x 990, 992 (7th Cir. 2004).

Here, in July 2014, Minor B stated that she had received a diagnosis of bipolar disorder. The condition is close in time to the events Minor B will testify about at trial, because she was trafficked from mid-2014 to December 2014. Defendant, however, has not supported his argument (with evidence or information) that Minor B's bipolar disorder was of a nature that that it affected whether Minor B can accurately perceive events. "To be relevant, the mental health records must evince an

impairment of the witness's ability to comprehend, know, and correctly relate the truth." *United States v. Jimenez*, 256 F.3d 330, 343-44 (5th Cir. 2001) (internal citations omitted); *see also United States v. Peters*, 236 F. App' x 217, 221 (7th Cir. 2007) ("a jury should know about any mental health issues that would compromise a witness's ability to perceive and recall events at the time the crime occurred"). "For witnesses whose mental history is less severe, district courts are permitted greater latitude in excluding records and limiting cross-examination." *Jimenez*, 256 F.3d at 330; *see United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995) (affirming limit on cross-examination of witness who was depressed and took Prozac and Elovil shortly before conspiracy).

Similar facts were present in *United States v. George*, 532 F.3d 933 (D.C. Cir. 2008). The witness suffered bipolar disorder; the defense sought to cross-examine the witness about the disorder; the district court excluded it. In affirming the district court, the D.C. Circuit reasoned:

> The days are long past when any mental illness was presumed to undermine a witness's competence to testify. The category of mental illnesses includes a wide variety of conditions, of varying degrees of severity and substantially different effects. . . . We have recognized mental illness as potentially relevant in a broader range of circumstances, so that, for example, depression could in some cases be relevant to credibility. Nevertheless, some indication is needed that a particular witness's medical history throws some doubt on the witness's competence or credibility.

*Id.* at 936-37. While it is possible that bipolar disorder could manifest itself in a specific way that would impact Minor B's perception of reality, defendant is far from making that showing here and has alleged no facts to support it, particularly where

"depression and suicidal tendencies may be less indicative of severe mental incapacity" when they involve adolescent witnesses. *Jimenez*, 256 F.3d at 344.

## IV. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OBTAINED FROM DEFENDANT'S STORAGE LOCKER

The government anticipates introducing evidence at trial that, from approximately 2016 to 2017, defendant rented storage unit #6003 at Extra Space Storage in Oak Park. The contents of the unit were auctioned off on April 4, 2017, due to defendant's non-payment of monthly fees. The unit's contents were purchased by an individual who gave the FBI verbal and written consent to search certain paperwork that had been stored in the unit (but since had been abandoned). During that search, the government discovered certain documents that belong to Minor C. For example, included within a stack of papers found in the storage unit were Minor C's school homework and Illinois Department of Juvenile Justice Youth Disciplinary Reports (containing Minor C's name, on a line titled, "Youth"). At trial, the government intends to call an FBI agent who was involved in the search to authenticate the documents. The government anticipates that Minor C will testify that the documents in question belong to her and that she left them at defendant's house during the period of time in which defendant trafficked her. Defendant has stipulated that the storage unit was his.

Defendant argues that the documents from the storage locker are not relevant because there is no evidence that defendant has ever seen these documents. R. 74. He is incorrect. Defendant trafficked Minor C in 2015. It was not until 2016 that defendant rented the storage unit. The unit was small; it did not contain every single

one of defendant's belongings. The papers belonging to Minor C were kept by defendant with other personal effects—paperwork, social security cards, birth certificates. It is a fair inference from the evidence that defendant knew of the contents of Minor C's papers and that he chose to keep them among his personal effects.

Defendant also argues that, even if the documents are relevant, they should be excluded under Rule 403. Rule 403 does not prohibit the introduction of prejudicial evidence; it prohibits unduly or unfairly prejudicial evidence, and the evidence from the storage unit does not fall into this category. The documents are highly probative. The government anticipates that defendant will deny that he trafficked minor victims, including that minor victims spent time in his basement (where they posted ads for sex on websites like backpage.com). The fact that defendant had documents belonging to one of the minor victims in his possession is itself highly relevant; and the fact that these specific documents retained by defendant reveal the minor's age makes them even more relevant. Any prejudicial impact is due to the relevance of the documents, not because of unfair use of the documents.

## V. THE COURT SHOULD DENY DEFENDANT'S MOTION TO ADMIT EVIDENCE UNDER RULE 412

Defendant argues that the Court should allow him to admit evidence that some of defendant's victims willingly worked as prostitutes prior to meeting defendant.[2]

---

[2] The government will introduce evidence of specific instances of sexual conduct between defendant and the victims. Specifically, Minors A and B will testify that defendant had sex with each of them as part of his ongoing trafficking of them. This is direct evidence of defendant's offense and is further addressed in the government's motions in limine.

The government expects the victims, who are all now adults, to testify at trial. Several of the victims (Minor A, Minor B, and Minor D) worked on their own as prostitutes both before and after defendant trafficked them or attempted to traffic them.[3]

The evidence defendant seeks to admit—Minor D's prior prostitution and the details of the prior prostitution of Minors A and B, along with any other discussion of the minors' sexual history—should be excluded. This includes, for example, questioning a victim about whether she worked as a prostitute after defendant trafficked her; seeking to admit other backpage.com ads of the victims that are not linked to defendant; and offering text messages, images, videos, or social media posts made by or about the victims involving their sexual conduct or the sexual conduct of others.

### *The Evidence is Inadmissible Under Rule 412*

By its plain terms, Rule 412 bars evidence of a victim's sexual history and sexual predisposition in cases involving allegations of sexual misconduct:

> The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct . . . :
>
> > (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> >
> > (2) Evidence offered to prove any alleged victim's sexual predisposition.

Fed. R. Evid. 412(a).

---

[3] The government may elicit some of this evidence from the victims insofar as Minors A and B may testify that they met defendant while engaging in prostitution.

The purpose of the Rule is to "safeguard the alleged victim against the invasion of privacy, potential embarrassment, and sexual stereotyping that is associated with public disclosure of intimate sexual details," and to "encourage[ ] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Fed. R. Evid. 412, Advisory Committee Notes; *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012); *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009). This purpose is consistent with other provisions of federal law, which provide that all crime victims have "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Consequently, Rule 412 is interpreted broadly to apply to all sexual behavior of the victim before trial, *United States v. Torres*, 937 F.2d 1469, 1472 (9th Cir. 1991), "whether offered as substantive evidence or for impeachment," Fed. R. Evid. 412, Advisory Committee Notes. The protections of the rule are particularly important when the victims are underage. *See United States v. Ogden*, 685 F.3d 600, 606 (6th Cir. 2012).

Rule 412 applies in sex trafficking cases. *See*, *e.g.*, *United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017) (applying the rule to a § 1591 sex trafficking offense and affirming the district court's exclusion of evidence that the victims were trafficked as prostitutes before being trafficked by defendant); *Cephus*, 684 F.3d at 708.

In criminal cases, Rule 412 contains three exceptions that apply in "limited circumstances":

> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution;

(C) evidence the exclusion of which would violate the constitutional rights of the defendant.

Fed. R. Evid. 412(b)(1); *United States v. Courtwright*, 632 F.3d 363, 368 (7th Cir. 2011). None of these exceptions for defense use of this evidence applies in this case.

The first exception does not apply because this is not a sexual assault case, and defendants is not charged with offenses relating to sexual behavior with the victims that involved semen, injury, or other physical evidence. *See Elbert*, 561 F.3d at 776.

The second exception—permitting certain evidence of victim's sexual behavior to establish consent—does not apply. Consent is not a defense to the charges that defendant trafficked minor victims, because girls under the age of 18 cannot give valid consent to being exploited under § 1591. *Elbert*, 561 F.3d at 776; *United States v. Campbell*, 764 F.3d 880, 888 (8th Cir. 2014); *Torres*, 937 F.3d at 1473.

The third exception does not apply because exclusion of the victims' sexual history does not violate defendant's constitutional rights. The exclusion of the victims' sexual history does not violate defendant's Sixth Amendment right to confront these witnesses at trial. Courts have "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Clark*, 657 F.3d 578, 583-84 (7th Cir. 2011) (quotation omitted). The exclusion of the victims' prior sexual conduct is appropriate because, as the Seventh Circuit noted in *Cephus* and the Eighth Circuit

noted in *Elbert*, the victims' prior sexual history "has no impeachment value here . . . [E]vidence the children previously engaged in prostitution does not contradict evidence the children engaged in the acts of prostitution for which [defendant] has been charged." *Elbert*, 561 F.3d at 777; *see also United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015).

In short, evidence about the victims' sexual history does not go to any element of the offense for which defendant is charged. *Cephus*, 684 F.3d at 708; *Gemma*, 818 F.3d at 34. Evidence that victims were trafficked by other pimps, worked on their own as prostitutes, or had other sexual encounters "is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act." *Elbert*, 561 F.3d at 777.

\* \* \* \*

Defendant argues that Rule 412 does not govern the admissibility of evidence about the victims' prostitution activities because he does not intend to introduce that evidence for "propensity" purposes. R. 79 at 6. According to defendant, the evidence if relevant to his state of mind, including whether he knew or recklessly disregarded their age. *Id*. Apparently, the logic is that, because people under the age of 18 don't prostitute themselves, defendant believed that they were over 18 because they were prostitutes.

This argument is without merit. First, Rule 412 contains no reference to propensity. The Rule does not bar the introduction of a witness's prior sexual misconduct only if it is being introduced to show the witness's propensity to engage

in that conduct. The Rule provides a wholesale bar on any evidence offered to prove that the victim engaged in other sexual behavior, subject to the narrow exceptions discussed above.

Second, defendant's argument about the relationship between the victims' prior prostitution and defendant's alleged state of mind makes no sense. The defense's theory rests on a flawed and unreasonable assumption that, because the victims were engaged in prostitution, they must have "told their clients they were at least 18 years old and that their clients believed them." R. 79 at 6. Prostitution is illegal in Illinois, regardless of the age of the prostitute. There can be no inference about the prostitute's age drawn from the mere fact that they are a prostitute. There is a significant demand for prostitutes under the age of 18, just as there is demand for prostitutes over the age of 18. The fact that defendant met some of his victims on the street, where they were selling sexual services, doesn't make it any more or less likely that defendant reasonably believed them to be 18 (especially given that defendant admitted to FBI agents, in a video-recorded interview that will be admitted at trial, that the victims were minors).

Third, defendant was not privy to the information he discusses in his motion—statements to law enforcement about why the minors engaged in prostitution, or what representations the minors made to those who paid them for sex. These facts cannot bear on defendant's state of mind if he did not know them, and whether others believed the minors were over 18 is wholly irrelevant.

### *The Evidence is Inadmissible Under Rule 403*

Even if evidence concerning the victims' other sexual conduct were admissible under Rule 412, it is inadmissible under Rule 403. Such evidence is irrelevant; but even if it is marginally relevant, its relevance is substantially outweighed by the risk of unfair prejudice, namely, the substantial risk that the jury will question the victims' sexual morals and view them as immoral and untruthful because of their sexual activities. If exposed to this evidence, the jury could conclude, contrary to the law, that victims who had previously or subsequently been trafficked by other pimps, or otherwise worked as prostitutes, were "asking for it" or otherwise "deserved" to be trafficked. *See Wood v. Alaska*, 957 F.2d 1544, 1552-53 (9th Cir. 1992).

Additionally, any minimal probative value of such evidence is also far outweighed by the risk of undue delay and confusion. First, evidence about whether victims otherwise worked as prostitutes before or after defendants trafficked them, opens up numerous otherwise irrelevant issues, including when, for how long, and under what circumstances the victims were trafficked. Such detours involving third parties who are not part of the case could easily become trials within the trial, are peripheral to the real issues in the case, and will only serve to confuse the jury and waste time. The victims are not on trial for their prostitution activities and introduction of this evidence would distract the jury from the actual purpose of the trial. For these and other reasons, courts have excluded such evidence under Rule 403. *See, e.g., Elbert*, 561 F.3d at 777.

## VI. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF SPECIAL AGENT CARRIE LANDAU

The government anticipates calling FBI Special Agent Carrie Landau to testify regarding sex trafficking. Based on her experience and training, the government has disclosed to defendant, pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, that it intends to elicit testimony from Special Agent Landau on the following subjects:

- Typical means sex traffickers use to target, recruit, manipulate, and maintain victims and contributing factors that can make victims more susceptible to influence by sex traffickers. For example, Special Agent Landau will testify about the types of adult and minor females who commonly are recruited by pimps to participate in prostitution: females who lack familial support or otherwise feel unloved and unwanted, are in need of money or housing (or both), are addicted to or frequently use drugs and alcohol, who have previously been a victim of crimes, and/or who suffer from mental illness or severe body image issues. She also will opine on common methods used by pimps to target and recruit vulnerable victims and control them thereafter, such as providing housing, food, and affection.

- Specialized language used in the pimp/prostitute subculture, including certain code words employed by those who engage in prostitution or who solicit sexual acts in exchange for money.

- The business of prostitution and how it has changed due to technological advances, including the now-common use of internet websites like Backpage.com and the use of cell phones to solicit and arrange prostitution activities.

- Common dynamics between sex traffickers and their victims and between the multiple victims that may be working for a sex trafficker at a given time. For example, in Special Agent Landau's experience, pimps can use older women to watch over and train new recruits, including minor recruits.

- Common reactions by victims of sex trafficking, including victims' tendencies to become compliant with their pimps, to express love or loyalty towards their pimp, to feel shame and embarrassment about their conduct (which can result in minimization of their conduct), and to blame themselves for the circumstances in which they are found. For any/all of these reasons, victims of sex trafficking may not be completely forthcoming when questioned by law

enforcement.

With its notice, the government additionally provided defendant with Special Agent Landau's curriculum vitae and the transcript from a federal trafficking trial in Indiana at which Special Agent Landau testified on a similar subject matter.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Each of these requirements is met here.

### Special Agent Landau's Testimony Will Assist the Trier of Fact and Is Relevant

Defendant argues that Special Agent Landau's testimony will not assist the trier of fact because the subjects being discussed are "within the purview of the average adult" and because the topics on which Special Agent Landau will testify "are not factually linked to the allegations contained within the indictment." R. 80 at 4, 5. The government disagrees.

Special Agent Landau's proposed testimony is directly relevant to helping the jury understand the prostitution trade and the tactics that are commonly used by

pimps to recruit, entice, harbor, transport, provide, obtain, and maintain young women and girls to engage in prostitution—words that come directly from the elements the government must prove at trial. Special Agent Landau's testimony will assist the jury in understanding a subculture that is not known to ordinary Americans.

The admissibility of this type of expert testimony is well established. *See, e.g., United States v. Anderson*, 560 F.3d 275, 281 (5th Cir. 2009) (expert testimony on "typical characteristics of adolescent prostitutes and[] behavior of pimps" based on the witness's experience); *United States v. Hayward*, 359 F.3d 631, 636 (3d Cir. 2004) (expert testimony on "the patterns exhibited by many acquaintance child molesters, including selection of victims from dysfunctional homes, formulation of a customized seduction process, lowering the victim's inhibitions about sex, isolating the victim, and soliciting the victim's cooperation in the victimization process"); *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) (expert testimony about the relationship between pimp and prostitute helpful to jury's understanding of charges and the behaviors of the parties, including why a prostitute may not have testified truthfully in a previous proceeding about her relationship with her pimp); *United States v. Hayward,* 359 F.3d 631, 635 (3d Cir. 2004) (expert testimony on modus operandi of child molesters); *United States v. Alzanki,* 54 F.3d 994, 1005–06 (1st Cir. 1995) (expert testimony on tendency of abuse victims to remain with their abusers); *United States v. Azure,* 801 F.2d 336, 340 (8th Cir. 1986) (expert testimony on inability of children to distinguish truth from fantasy); *Elat v. Ngoubene*, 993 F. Supp. 2d 497,

514-515 (D. Md. 2014) (expert testimony on sexual abuse "would be helpful to a jury and therefore is admissible").

For example, recently, at the trial in *United States v. Carson*, 870 F.3d 584 (7th Cir. 2017), the district court admitted similar expert testimony by Dr. Sharon Cooper, a sex trafficking expert who helped explain how the desperate situations in which victims find themselves make them easy targets for sex trafficking. The defendant did not challenge the admissibility of the expert testimony on appeal, but the Seventh Circuit summarized the testimony and emphasized its importance to the jury's understanding of sex trafficking and the particular dynamics between a trafficker and his victims:

> [Dr.] Cooper testified that sex traffickers select victims who demonstrate vulnerabilities including homelessness, substance abuse, mental health issues, and histories of physical, emotional or sexual abuse. A typical trafficker recruits victims by telling them that he loves them, promising them a better life, providing them with shelter and drugs, and lying to them about the nature of the job. Traffickers often use one victim to recruit other victims as victims are more likely to trust someone of a similar age and gender than a stranger of the opposite gender.

*Id.* at 590-91.

Contrary to defendant's claim that the issues in this case are not so complex that an expert is needed, the Seventh Circuit in *Carson* described the import of the expert's testimony as providing the jury with a "general understanding of the complexity of trafficking in general," including the often counterintuitive behavior of victims:

> Importantly for this case, and for a general understanding of the complexity of trafficking in general, Cooper explained that victims often stay with their traffickers—or leave and then return—because they believe they have nowhere

16

to go; that there is no one else out there for them, and no other options for them; they feel ashamed and guilty and stigmatized, thinking that they will not be accepted elsewhere. They are also afraid that if they leave, the trafficker will find them and harm them even more egregiously.

870 F.3d 590-91. The usefulness of this testimony was apparent because the jurors had heard "testimony that could be construed as evidence that the victims had chosen their lot," including "evidence intended to convince them that these women willingly agreed to work as prostitutes" and that the women had "left Carson and then returned, and that at times both could have left but did not do so." *Id.*

Likewise, in *United States v. Johnson*, 860 F.3d 1133 (8th Cir. 2017), the Eighth Circuit recently affirmed the district court's admission of expert testimony about the general characteristics of abuse victims:

> Regardless of the victim's age, expert testimony about how individuals generally react to sexual abuse—such as not reporting the abuse and not attempting to escape from the abuser—helps jurors evaluate the alleged victim's behavior. So long as the expert does not impermissibly "vouch" for the victim by, for example, diagnosing the victim with sexual abuse or expressing an opinion that sexual abuse has in fact occurred, the testimony does not necessarily invade the jury's exclusive responsibility to determine the credibility of witnesses.

*Id.* at 1140-41 (internal citations omitted).[4]

Although fraud and coercion are not alleged here (unlike in *Carson*), the government anticipates that the jury in this case will hear similar testimony about the poor choices made by victims. The jury will hear that defendant met some of the minor victims while they were "walking the stroll," meaning that they were already

---

[4] As in *Johnson*, the expert will not vouch for the victims in this case and will not offer any opinion on whether defendant trafficked these particular victims. Special Agent Landau has no knowledge of the facts of this case, has never met or interviewed the victims, and will not opine on or otherwise discuss the specific facts here.

involved in prostitution activities. The jury will hear that at least one of the minor victims lived in defendant's basement for a period of time, although she was not barred from coming and going from the basement on her own volition. The jury will hear that at least one of the minor victims left defendant for a period of time and returned to him voluntarily approximately a year later. And the jury will hear that one of the minor victims was paid by defendant to post backpage.com ads of other women who worked for defendant. All of this evidence could be wrongly interpreted by the jury as demonstrating willingness or consent, and the testimony of an expert is necessary to explain that the evidence is not inconsistent with trafficking.

Defendant argues that Special Agent Landau's testimony is within the understanding of the general public. Not so. That a victim would be compliant with her trafficker is contrary to many people's understanding; most assume instead that she would naturally flee her abuser at the first available opportunity. As the Seventh Circuit explained in *United States v. Davenport*, 149 F. App'x 536 (7th Cir. 2005):

> Disabusing jurors of mistaken "common knowledge," and helping them to sift facts from suppositions, are important functions of experts. That's why we held in *United States v. Romero*, 189 F.3d 576, 587 (7th Cir. 1999), that district judges are free to admit testimony of this kind, and [the government's expert testimony on grooming] in particular.

*Id.* at 538.

On the topic of sex trafficking more generally—for example, terms used in the industry (out call, in call, walking the stroll), or how websites like backpage.com are used to advertise girls for sex services—the testimony of Special Agent Landau will assist jurors in understanding the testimony of the victims. The average juror has no

exposure to sex trafficking and knows nothing about the subject. *Taylor*, 239 F.3d at 998 ("By and large, the relationship between prostitutes and pimps is not the subject of common knowledge," and "[a] trier of fact who is in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution"); *Pepe-Frazier v. State*, 331 Ga. App. 263, 268 (Ga. Ct. App. Mar. 18, 2015) ("[T]he reasons why teenage prostitutes do not run away from their pimps, prostitution terminology, and scare tactics frequently used by pimps upon prostitutes—are certainly outside of the ken of the average juror.").

### Special Agent Landau's Testimony Satisfies Rule 702 and Daubert

Defendant also is incorrect that Federal Rule of Evidence 702(a) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.C. 579, 592 (1993), require scientific evidence. Under *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141-142 (1999), a court may admit non-scientific expert testimony if the expert has technical or other specialized knowledge that will assist the trier of fact in understanding or determining a fact in issue. For example, in *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005), the Seventh Circuit explained: "[W]e have recognized that while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." (internal quotations and citations omitted). In *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002), the Seventh Circuit observed that the Advisory Committee notes to Rule 702

specifically provide that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

Special Agent Landau's resume qualifies her as having special knowledge of sex trafficking. Special Agent Landau has developed an expertise in sex trafficking through extensive experience investigating these types of offenses. Over many years, she has interacted with hundreds of victims of child sexual exploitation, conducted hundreds of interviews of suspected sex traffickers and victims, and worked with many other law enforcement officers who specialize in this area of the law. She also has received extensive training and instruction in the investigation of crimes against children and now provides such training to others.

In challenging Special Agent Landau's expert qualifications, defendant argues that her "curriculum vitae lacks any reference to systematically collected and studied data from sex trafficking victims whatsoever." R. 80 at 9. But, as Judge St. Eve explained in *Shamsud-Din*, 2012 WL 280702, at *4-5, addressing a similar challenge to an expert's qualifications to discuss the common dynamics between trafficker and victims:

> What [d]efendant overlooks, however, is that "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." In certain fields, like the study of sex trafficking, experience may well be the "predominant, if not the sole basis for a great deal of reliable expert testimony."

*Id.* (internal citations omitted). Special Agent Landau has the requisite experience with child victims and traffickers—precisely the experience necessary in this field to be an expert on the subject matters of her testimony.

Related to defendant's challenge to Special Agent Landau's qualifications is his objection that the agent's proposed testimony is not based on reliable data. The requirement imposed by Rule 702 is that the proffered testimony must be "based upon sufficient facts or data" and be "'the product of reliable principles and methods." This is not a case where the expert testimony is based on hard science that must comport with scientific standards and be peer reviewed. But nor is hard science a requirement for admissibility under Rule 702. The Seventh Circuit has explained that a trial court "is not compelled to exclude [an] expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension." *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998). "All you need to be an expert witness is a body of specialized knowledge that can be helpful to the jury." *Id.* (affirming expert testimony on knowledge of police training). Special Agent Landau has expertise that comes from specialized experience. It is not based on hard sciences or an empirical study, but it is based on the type of experience that has led dozens of courts to admit similar expert testimony in child exploitation and trafficking cases. *See supra*; *Dhillon v. Crown Controls Corp.,* 269 F.3d 865, 870 (7th Cir. 2001) ("*Daubert* is a flexible test and no single factor, even testing, is dispositive.").

### The Government's Notice Satisfied Rule 16

Finally, defendant argues that the notice of Special Agent Landau's anticipated testimony is insufficient. The notice provided by the government was comprehensive, spanning more than two pages single-spaced. It identified, in detail, the bases and subject matters of Special Agent Landau's anticipated testimony. It is

not clear what defendant thinks is missing from the notice. To the extent he requests an explanation of how the testimony relates to the specific facts of this case, this will not be part of Special Agent Landau's testimony. The agent will not be asked to opine on any particular conduct of defendant or the minor victims; she has no familiarity with the facts of this case.

## VII. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE THE IDENTIFICATION OF DEFENDANT BY MINOR D

Defendant seeks to preclude Minor D from making an in-court identification of him. R. 81. He says that, because she previously was unable to identify defendant in a photo (and later spoke to Minor A about the photo), the government should not be permitted to ask her to make an in-court identification. This is incorrect.

According to Minor A and Minor D, in 2014, a man called in response to a backpage.com ad defendant had posted of Minor A. The man asked for two girls. Minor A suggested her cousin, Minor D. Minor A and defendant drove to pick up Minor D, with defendant making a comment about how young Minor D looked (she was approximately 16 at the time). Defendant drove Minors A and D to the "call," waited until the "call" was finished, took half of the cash earnings, and drove Minor D home. After Minor D exited the car, defendant commented to Minor A that she only brings around girls who are younger than 12 and wear barrettes.

During a later interview with the government, Minor D was shown a photograph of defendant. She said that she did not recognize the person pictured. After the interview, Minor D told the government that she had spoken to Minor A

about the photograph. Minor D later explained that she had only seen the man (defendant) once and didn't realize that it was the same person.

"[A] witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine." *United States v. Briggs,* 700 F.2d 408, 413 (7th Cir. 1983); *see also United States v. Vinson,* 21 F.3d 431 (7th Cir. 1994) ("[T]his court has noted that, at least with respect to prior photo lineups, the fact that eye witnesses to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons does not . . . detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine." (internal marks omitted)); *United States ex rel. Kosik v. Napoli,* 814 F.2d 1151, 1160 (7th Cir. 1987) ("[A] previous failure to make a positive identification from a photo array does not necessarily, or even normally, make the later identification less certain." (citations omitted)). The Seventh Circuit, in fact, has characterized the argument that the trial court should exclude in-court identifications where the witness previously was unable to identify the perpetrator as "novel" and unsupported by "controlling case law." *Briggs,* 700 F.2d at 413.

In other words, the defense is free to cross-examine Minor D about her prior inability to identify defendant from a driver's license photo. But it's for the jury, not the court, to "determine[ ] the weight to give the in-court identification. A less-than-positive identification may still be sufficient and reliable when considered with all

other evidence; it is a matter of factual argument for the jury." *United States v. Clay*, 165 F.3d 33 (7th Cir. 1998) (internal citation to *Briggs* omitted)

## VIII. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant the government's motions *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  *s/ Christine M. O'Neill*
ANDRIANNA D. KASTANEK
CHRISTINE M. O'NEILL
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300