UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Judge Chang |
| v. | ) | |
| | ) | No. 17 CR 082 |
| ALLEN YOUNG | ) | |
| | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 412**

NOW COMES the Defendant, ALLEN YOUNG, by and through his attorney, MICHAEL SCHMIEGE, and pursuant to Federal Rule of Evidence 412, and the Sixth and Fourteenth Amendments to the United States Constitution, replies to the Government's response to his Motion to Admit Evidence Pursuant to FRE 412 and respectfully moves this Honorable Court for an Order admitting evidence that the individuals who allegedly worked for him as prostitutes willingly worked as prostitutes prior to meeting Mr. Young. For the reasons set forth below, Mr. Young urges this Court to grant his motion.

The Constitution guarantees "a meaningful opportunity to present a complete defense" at trial. *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Federal Rule of Evidence 412 bars the introduction of evidence of a victim's "sexual behavior" and "sexual

predisposition." Fed.R.Evid. 412(a)(1),(2). In a criminal case, however, the rule yields if the exclusion of evidence would violate the defendant's constitutional rights. *Id.* at (b)(1)(C).

The government states Courts have "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," citing *United States v. Clark*, 657 F.3d 578, 583-84 (7th Cir. 2011). However, the evidence sought to be elicited in *Clark* is not comparable to the evidence Young seeks to elicit. In *Clark*, the Court stated, *ibid.*:

> …we disagree that McCormick's testimony was as indispensable to the government's case against Clark as he makes it out to be. What doomed Clark was the 10 ounces of cocaine found inside his truck, not McCormick's testimony about how and why the drugs got there. It is hard to imagine any jury acquitting Clark of possession with intent to distribute no matter how many peripheral lies McCormick might have told. The bottom line is that she called Clark, with police listening in, and asked him to deliver 10 ounces of cocaine, and he did exactly that. What else did the jury need to know? … This line of questioning was highly inflammatory yet only barely relevant. …to permit him to hammer home that point by asking whether McCormick had violated an order of protection when she left intimate letters and sex toys on Parker's windshield not only would have been redundant but, worse, would have reduced the proceedings to a sideshow. The Constitution does not require courts to allow this sort of meaningless spectacle.

"Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to

the purposes they are designed to serve." *Michigan v. Lucas,* 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (internal quotation marks omitted). To that end, the Supreme Court limited a state rape-shield law when it impinged upon a defendant's Confrontation Clause right. *Olden v. Kentucky,* 488 U.S. 227, 231-32, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (finding constitutional violation in a case where the central issue was consent and the court excluded evidence "from which jurors ... could appropriately draw inferences relating to the reliability of the witnesses" and from which "a reasonable jury might have received a significantly different impression of the witness' credibility" (internal alterations and quotation marks omitted)).

**Impeachment**

The minor alleged victims in this case have given approximately 25 statements to law enforcement. Those statements detail their lives, friendships with each other and involvement in prostitution prior to meeting Young. The statements contradict each other in numerous ways and cast doubt upon the credibility of the witnesses. In addition, information recently obtained from the government that falls squarely within FRE 412 shows that Minor A has extreme bias against Young. Furthermore, the government is advancing a position that Young trained these alleged victims in how to prostitute themselves, which contradicts the alleged victims' statements to law enforcement and Grand Jury. This Court must allow Young to inquire

3

about the alleged victims' past in order to fully cross-examine them and develop inconsistencies and motives to lie.

The government argues that evidence about the victims' sexual history does not go to any element of the offense for which defendant is charged, and that defendant's argument about the relationship between the victims' prior prostitution and defendant's alleged state of mind makes no sense. Not so. The defendant's state of mind is *the* issue in this case – as the government must prove that (1) The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained the person identified in the indictment, or knowingly benefitted, financially or by receiving a thing of value, from participation in a venture which has engaged in an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining the person identified in the indictment; and (2) the defendant knew or knowingly disregarded the fact that they were minors.

The government also states that the purpose of the Rule is to "safeguard the alleged victim against the invasion of privacy, potential embarrassment, and sexual stereotyping that is associated with public disclosure of intimate sexual details," and to "encourage[ ] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." [1] The government's argument that this evidence needs to be

---

[1] Citing Fed. R. Evid. 412, Advisory Committee Notes; *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012); *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009).

excluded for privacy concerns of the alleged victims is purely for atmospherics, and will place limitations on the defendant's Sixth Amendment rights to confront his accusers. The government exaggerates the need for these protections, ignoring the alleged victims' own disregard for their privacy. They have not left their past behind or moved on to more anonymous, legal careers.

The alleged victims have continued offering commercial sex acts via the Internet advertisements and in person well after they voluntarily cut ties with Young. The government's concern for the witnesses' privacy is undermined by the witnesses' chosen occupation, and their voluntary decision to advertise their services on the Internet. In other words, the government's interests in the safety and personal and professional well-being of the alleged victims is not shared by the alleged victims, nor necessary for them to pursue their livelihoods unmolested. Furthermore, the indictment refers to them as Minor A, B, C, D, E, and their legal names are not part of the public record.

Moreover, this is not a case where the alleged victims engaged in sexual acts against their will. In fact, the opposite is true. Young did not force or threaten anyone to engage in prostitution. According to the discovery the government produced, these alleged victims came to Young in order to enhance their careers in prostitution. They encouraged Young and others to provide them with the knowledge and skills to become more marketable and profitable. Their past conduct, as well as their conduct after they voluntarily left Young, is the crux of the case as to whether Young knowingly engaged in a

sex trafficking crime.

**FRE 403**

The government further argues that the evidence is inadmissible under FRE 403. If exposed to this evidence, the jury could conclude, contrary to the law, that victims who had previously or subsequently been trafficked by other pimps, or otherwise worked as prostitutes, were "asking for it" or otherwise "deserved" to be trafficked. [2] First, the government has not provided Young with any discovery that the alleged victims "had previously or subsequently been trafficked by other pimps." Second, the defense is not going to argue that Young should be acquitted because the alleged victims were asking for it or deserved to be trafficked – that is simply outlandish. Rule 412 does not bar the introduction of evidence in "circumstances in which the probative value ... significantly outweighs possible harm to the victim." Fed.R.Evid. 412 advisory committee notes.

Here, in light of the charges and the government's theory of its case, the evidence is highly probative: if credited, it would have been a full defense to the sex-trafficking theories advanced by the prosecution. A reasonable juror could conclude that prior and subsequent, voluntary work in the industry suggested that the employment arrangement here was consensual and not recruited, enticed, harbored, transported, provided, obtained, and maintained by Young. In addition, the probative value of the evidence, which address

---

[2] Citing *Wood v. Alaska*, 957 F.2d 1544, 1552-53 (9th Cir. 1992).

whether Young knew or reckless disregarded the age of the minors, substantially outweighs any unfair prejudice.

***Carson* & *Cephus***

The government relies on the recent Seventh Circuit cases of *Carson* and *Cephus*. However, those two case are quite distinguishable from the instant case.

In *Carson*, the Seventh Circuit held that, in a prosecution under Section 1591(a), a victim's prior prostitution is irrelevant to whether the defendant "knew or recklessly disregarded the fact that his own use of force, threats, and coercion caused the victims to engage in commercial sex." *United States* v. *Carson*, 870 F.3d 584, 595 (7th Cir. 2017). The Court concluded, *ibid.*:

> Whether they had worked as prostitutes previously would have no effect on whether [defendant] knew (or recklessly disregarded the fact) that force, threats of force or coercion would have caused his victims to engage in commercial sex acts under his 'employ.' This is particularly true because [defendant] was the one using force, threatening, and coercing them. Had [defendant] truly subjectively believed (whether correctly or not) that the victims were voluntarily working for him as prostitutes, he would have had no reason to rape, beat and threaten them, to take their telephones, clothing, shoes and control their access to drugs.

In *Cephus*, the Seventh Circuit reached a similar conclusion. *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012). The Court stated, *ibid.*:

> Specifically the defendants wanted to cross-examine one of the adult call girls in Cephus's stable (Cassandra by name) about her having worked as a prostitute before he recruited her. They wanted to suggest that having already been a prostitute she would not have been deceived by Cephus and therefore her testimony that she was coerced into working for him — an

element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a) — should be disbelieved. But the testimony sought to be elicited by the cross-examination would have been irrelevant. Even if no promises were made to Cassandra, this would not be evidence that she consented to be beaten and to receive no share of the fees paid by the johns she serviced. And even if she knew going in, from her prior experience, that Cephus probably would beat her, it was still a crime for him to do so. And finally the fact that she'd been a prostitute before does not suggest that he didn't beat and threaten her — that was his *modus operandi* and there's no evidence that he would have made an exception for Cassandra.

The arguments advanced by the defendants in those cases are in essence – if she worked as a prostitute in the past then she is consenting to the force, threats of force or coercion being used against her. Those arguments and findings by the Seventh Circuit in those cases are not applicable here – where force, threats and coercion are not being alleged. The alleged victims voluntarily associated with Young, freely and voluntarily offered their services, and freely left Young. Young must be allowed to examine the witnesses and argue to the jury that none of the girls were recruited, enticed, harbored, transported, provided, obtained, and maintained by Young.

**Government Seeks To Introduce Evidence Of Prior Sexual Activity When It Suits Them**

The government seeks to bar evidence pursuant to FRE 412 when it hurts them, and admit it when it helps. They cannot use FRE 412 as both a sword and a shield – if the government wishes to introduce certain evidence in

their case, they can't use privilege to shield the defendant from introducing the same evidence.[3]

The government alleges that the defendant was a pimp who operated a sex-trafficking ring in the Chicagoland area and elsewhere for at least three years. *Santiago Proffer* at 1. The government states that the "government's evidence in this case may include testimony and evidence about the involvement of women who worked for and/or were trafficked by defendant (other than the victims who are the subject of the charged counts)…" *Government's Motions in Limene* at 3. The government anticipates that Individual A will testify that she worked for defendant as a prostitute and Minor C is anticipated to testify that, during defendant's initial recruitment of her, defendant drove her to dates along with others, including Individual B. *Id.*

Individual A and B are considered victims pursuant to FRE 412. The terminology "alleged victim" is used because there will frequently be a factual dispute as to whether sexual misconduct occurred. It does not connote any requirement that the misconduct be alleged in the pleadings. Rule 412 does

---

[3] *See People v. Johnson*, 107 Cal. Rptr. 3d 228, 246 (Cal. Ct. App. 2010) The exclusion of *any* relevant evidence raises similar questions, and courts often say the exclusionary rule is a shield from suppressed evidence, but not a sword with which the defendant can inflict damage on the prosecution's remaining case.

not, however, apply unless the person against whom the evidence is offered can reasonably be characterized as a "victim of alleged sexual misconduct." See FRE 412 committee notes. The government claims that Young trafficked these woman and if he trafficked them then they could reasonably be characterized as a victim of alleged sexual misconduct. If that is the case then FRE 412 applies and evidence of prior sexual activity, i.e. prostitution, is not admissible.

The government wishes to introduce evidence of specific instances of sexual conduct between defendant and the victims. Specifically, Minors A and B will testify that defendant had sex with each of them as part of his ongoing trafficking of them. *Government's Response* at 6, footnote 2. The government also claims Minors A and B may testify that they met defendant while engaging in prostitution. *Government's Response* at 7, footnote 3. Young must be allowed to explore the reasons for the sexual encounter with the girls, and be allowed to refute the government's allegation that he "had sex with each of them as part of his ongoing trafficking of them." They government must prove that Young benefited from his trafficking operation. It, however, cannot prove any monetary benefit with some of the girls, and thus, must introduce his alleged sex acts. This opens the door for Young to discredit the witnesses claims that he had sex with them as a benefit. The girls' prior and subsequent behavior and profession is direct evidence to negate the government's "genetic" claims.

The government cannot have it both ways; they cannot use FRE 412 as both a sword and a shield. If any of the FRE 412 evidence comes in then it all should.

**Conclusion**

It is hard to see how Young can put on a "complete defense," without evidence of the victims' prior employment as prostitutes. *Holmes* at 324. See *Cf. United States v. Alvarez,* 601 Fed.Appx. 16, 19 (2d Cir.2015) (summary order) ("Here, the district court admitted evidence of the victims' history of prostitution *prior* to their meeting Alvarez. In that way, Alvarez was able to present a complete defense and to impeach the government's witnesses using the admitted evidence of the victims' earlier prostitution.") See also *Cf. Alvarez v. Ercole,* 763 F.3d 223, 232 (2d Cir. 2014) (affirming grant of habeas relief when trial court's rulings "precluded [the defendant] from fleshing out his main defense theory"); and *Cf. United States v. Valenzuela,* 2008 WL 2824958, at *3 (C.D.Cal. July 21, 2008) (recognizing that if the government introduced evidence "tending to show that the victims ... did not expect to engage in prostitution ... it will have put those victims' sexual histories at issue" and, "[u]nder those circumstances, it is possible that... evidence rebutting the government's allegations might be admissible under the constitutional exception"). In this sex-trafficking case, Rule 412 furnishes no basis for precluding evidence of prior prostitution and precluding cross-

examination of the victims about work as prostitutes prior to their employ by defendants prevented defendants from presenting a full and complete defense.

WHEREFORE, the defendant respectfully requests that this Court grant his motion.

                                                      Respectfully Submitted,
By: s/ Michael P. Schmiege
Michael P. Schmiege
Attorney for Defendant

Michael P. Schmiege
Law Offices of Michael P. Schmiege, PC
33 East 1st Street, Second Floor
Hinsdale, Illinois 60521
(312) 626-2400 TEL
(312) 626-2401 FAX
mikeschmiege@gmail.com
IL ARDC 6287317