UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 17 CR 00082 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ALLEN YOUNG, | ) | |
| Defendant. | ) | |

### ORDER

The Court held a pretrial conference on January 9, 2018. This Order summarizes the motions and pretrial issues that were addressed during the conference.

## I. Motions in Limine

**Government's Motion No. 1 (other adults' testimony).** The prior order granted the government's motion to allow direct evidence of Defendant's alleged trafficking business based on the testimony of other women who worked for or were allegedly trafficked by Defendant. R. 99, Order at 1-2 (Jan. 5, 2018). The Order raised the possibility of a limiting instruction to explain that the jury could not consider the evidence for any purpose other than to determine whether Young committed the charged crimes. At the pretrial conference, the defense made the strategic decision to affirmatively disavow a limiting instruction (in order to avoid spotlighting the evidence). So no limiting instruction will be given. The Court reminded the government of the limitations contained in the prior order. Order at 2.

**Government's Motion No. 2 (sex acts with minors).** This motion had been granted in part, but left open the admissibility of evidence that Young, at times, paid the minors to have sex with him. R. 99, Order at 2-3. To start, the government retreated from the argument, made in the original motion in limine, that the evidence was relevant to § 1591(a)(2), namely, as showing that Young received a thing of value from the minors even when he was the one paying them for sex. Instead, the government offered three other grounds. First, according to the government, at times Young allegedly withheld money from Minors A and B until they had sex with him, thereby pushing Minors A and B to keep going back to Young, living with him, and participating in the commercial sex venture. Rather that subsection (a)(2), that evidence is relevant to whether Young "maintain[ed]"

the minors under subsection (a)(1). 18 U.S.C. § 1591(a)(1). Second, paying for sex can qualify as "obtain[ing]" a minor under Section 1591(a)(1). *See United States v. Jungers*, 702 F.3d 1066, 1074-75 (8th Cir. 2013). Finally, the government argued that the evidence shows that Young had specific chances to observe the minors unclothed, so that would be relevant to whether he recklessly disregarded their ages. At the pretrial conference, Defendant took the position that if the other sex acts with the minors would be allowed, *see* Order at 2 (Young demanded sex as payment and demanded a portion of the money received from customers), then Defendant did not object to the introduction of Defendant's payments for sex, and indeed Defendant intends to argue the same evidence for another purpose. So this third category of evidence as to sex acts with the minors is allowed.

**Government's Motion No. 3 (Minor A's work for Young):** The government previously moved to introduce evidence of the non-sex-act work that Minor A performed for Young's alleged sex trafficking business after she was trafficked. R. 99, Order at 3. At the pretrial conference, the government argued that the evidence, including the email addresses, phone numbers, and IP addresses that Young instructed Minor A to use in the Backpage ads, is relevant to identity because Young provided that information to Minor A. The government also plans on introducing text-message exchanges about the ads that are allegedly between Minor A and Young. Defendant continued to resist the evidence, arguing that it goes only to propensity and there is no confirmation that Young sent the text messages.

At the pretrial conference, the Court concluded that Defendant's arguments really go only to weight, rather than admissibility. There is more than enough circumstantial evidence (including recovering the phone from Young when he was arrested) from which a jury could conclude that Young was sending the text messages. Also, because the texts dictate instructions and captions for posting ads on Backpage, they also tend to show Defendant's knowledge of the website. There are non-propensity, non-bad-character purposes of the evidence, so the motion is granted.

The Court offered Defendant the opportunity to propose a limiting instruction for the text message exhibits, but defense counsel declined, again for strategic reasons. Defendant did, however, propose crossing Minor A on her involvement in Young's trafficking operation to emphasize that she herself became a participant rather than a victim after she was no longer trafficked by Young. That is permissible cross examination that goes to both (a) whether it really was Young who is responsible for trafficking others during that time period; and (b) Minor A's potential criminal exposure for what she did during that time period.

**Government's Motion No. 4. (Young's hearsay statements).** The Court previously reserved deciding the government's motion to bar Young's hearsay statements made during his February 2017 interrogation, because Defendant had

not received the transcript exhibits as of the time the defense filed its response. R. 99, Order at 3. Having now received the exhibits, Defendant does not believe he has any statements to introduce. The motion is granted as unopposed, but the Court will consider any additional statements Defendant might propose before trial.

**Government's Motion No. 7. (witness wrongdoing).** The government previously moved to bar the introduction of arrests or conduct not resulting in conviction pursuant to Federal Rule of Evidence 608(b). But the Court left open the opportunity for Defendant to explain how particular arrests might be probative for truthfulness. R. 99, Order at 4. At the pretrial conference, Defendant confirmed that no arrests fit the bill. The motion is granted.

**Government's Motion No. 11 (missing witnesses).** The government moved to prohibit argument about "missing" witnesses not called at trial. In the prior order, the Court left open the possibility that Defendant had a specific witness in mind that he had been blocked from interviewing or subpoenaing. R. 99, Order at 7. At the pretrial conference, Defendant conceded that no witness fits that description. So the motion is granted.

**Defense's Motion No. 1 (witness drug use).** The prior order generally denied Defendant's motion to allow evidence of drug use by witnesses—unless Defendant could offer a specific foundation that a witness's drug use at the time of the testified events would affect his or her perception or memory. R. 99, Order at 8. At the pretrial conference, Defendant explained that he wanted to elicit details about government witness Brooke McCarty's and Minor B's drug use during relevant periods.

*Brooke McCarty.* For McCarty, the defense proffered that she had abused heroin for about 7-8 years before meeting Defendant, and continued to do so during the time period that she interacted with Defendant. The government responded that Young supplied McCarty with heroin in exchange for her agreement to help teach certain minors how to use Backpage (she did not follow through on providing the help, according to the government). This evidence presumably would be foreclosed by a previously denied government motion in limine. *See* R. 99, Order at 6-7. The government argued that explaining why McCarty agreed to help Defendant was a non-propensity, permissible basis to introduce Defendant's provision of heroin to her. The Court agrees: the evidence is relevant to Young's intent to use Backpage by explaining why McCarty would agree to show minors how to use Backpage, and there is no reliance on a forbidden propensity inference. Indeed, this evidence is akin to the direct evidence of Young's alleged trafficking operation. *See United States v. Carson*, 870 F.3d 584, 598 (7th Cir. 2017). Because the evidence of the provision of heroin is allowed, Defendant must decide whether he wants a limiting instruction. Defendant must file a position statement on whether he wants a limiting instruction for this evidence by **January 18, 2018.**

3

With regard to McCarty's long-term heroin use *before* the events of the case, the government reserved its objection and asked for an opportunity to research the admissibility of that evidence. The government must file a supplemental brief by **January 18, 2018** on the issue, also attaching (under seal if necessary) the interview report where McCarty describes her history of heroin use. The filing should also include any argument on the heroin and Backpage quid pro quo between Young and McCarty. If the Defendant would like to respond, then he must do so by **January 20, 2018.** The government must also promptly provide the Defendant with related reports on the heroin use.

*Minor B.* Defendant seeks to introduce evidence of her general marijuana and ecstasy use (without limiting it to a specific time period), claiming that long-term drug use can affect the behavior and memory of users. The government renewed its objection, pointing out that this type of everyday drug evidence is exactly what the case law prohibits. The government did concede that the Defendant could question Minor B about any marijuana or drug use during the times she *specifically interacted* with him.

The motion is granted in part and denied in part. Defendant may question Minor B on her use of marijuana and ecstasy *during* the two time periods Young allegedly trafficked her, as well as the time in between if the Defendant has a good faith basis that the use continued. Defendant may not, however, cross-examine Minor B on any use of marijuana or other drugs before or after the alleged interaction with Defendant, because Defendant offers no reason to believe that her drug use was so heavy as to permanently affect her memory and perception. Even if the before-or-after drug use had any probative value, it would be substantially outweighed by the danger that the jury would unfairly hold that use against Minor B's character for truth-telling.

**Defense's Motion No. 2 (bipolar diagnosis).** Young originally moved to offer evidence that Minor B suffers from bipolar disorder in order to impeach her credibility. The prior order pointed out that not every mental disorder affects perception, memory, or truth-telling, so Young needed more in order to have a good-faith to cross examine on this point. R. 99, Order at 9 (citing *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001)). Without more, eliciting the bipolar disorder diagnosis would cause the jurors to leap to unfounded conclusions about credibility, in violation of Rule 403.

At the pretrial conference, the defense explained that they had no treatment records or other information on how Minor B's bipolar disorder affected her perception or memory. The defense had not subpoenaed any medical records. The government responded that it does not have any medical records and that the government disclosed Minor B's bipolar disorder diagnosis to the defense very early in the case (the defense did not dispute this). Defendant asked to subpoena the

records and for the Court to conduct an *in camera* review. The government objected given the late date, but the Court decided to permit this procedure, so long as the records arrive timely.

Accordingly, the defense shall serve the subpoena **as promptly as possible** (copying the government) and must make **absolutely certain** that the cover letter is clear that the records are to be delivered to the Court. If the records are mistakenly delivered to the defense, then counsel must refrain from opening the records and must immediately deliver them to the Court for the *in camera* inspection. If any part is deemed admissible, then the government might call a witness to rebut any bipolar-related evidence, which is reasonable given the late subpoena. The prior decision on the motion in limine about the bipolar diagnosis stands for now, but is subject to change if warranted by the *in camera* inspection.

**Minors' Aliases.** In discussing the subpoena for Minor B's records, the defense raised the prospect of crossing the minors on aliases and false dates of birth provided to the police when they were arrested. To that end, Defendant asked that the aliases listed on the criminal records for all of the minor victims be disclosed. The government argued that turning over the aliases violates the minors' privacy rights and, if crossed on, would implicate otherwise inadmissible arrests. The Court pointed out that the cross examinations can be crafted to avoid eliciting inadmissible arrests, by sanitizing the incidents with something to the effect of asking about "encounters" or "interviews" with the police. On the issue of whether to allow cross-examination into the incidents where minors gave aliases or false dates of birth to the police, the government shall file its position paper by **January 16, 2018**, and the defense shall respond by **January 20, 2018**. The defense also sought the unredacted arrest records. The government will review them to ensure the alias names are not too similar to the minors' real names, and if there is no objection, it agreed to mark them attorney's-eyes only and produce them to counsel in its filing (under seal).

**Defense's Motion No. 5 (Rule 412):** In the prior order, the Court explained how Rule 412 barred most of the defense theories of relevancy as to other acts of prostitution, R. 99, Order at 10-11, but there remained two potential avenues of admissibility: (a) the legal issue of whether the defense would be unfairly impaired in defending against the "recruit" or "entice" elements in § 1591(a)(1); and (b) the practical issue of whether the government itself was injecting other prostitution and coercion (or grooming) into the case, *id.* at 11-12.

Starting with the legal issue, the government argued that Rule 412 completely forecloses the admissibility of prior prostitution evidence because minors cannot, as a matter of law, voluntarily consent to commercial sex acts. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009). At least one other Northern District of Illinois order has followed that line of reasoning. *United States v.*

5

*Shamsud-Din*, 2011 WL 5118840, at *3-4 (N.D. Ill. Oct. 27, 2011). It is true that minors cannot, as a matter of *law*, consent to commercial sex acts (and sex acts more generally), but that does not necessarily mean that a defendant is thus disabled from defending against the *factual* assertions of "recruit[ment]" and "entice[ment]" by presenting (alleged) evidence that it was the minor who approached and encouraged the defendant to assist the minor in the prostitution business. Put in the context of this case, to the government's way of thinking, Defendant may cross examine the minors on whether they approached Young, rather than the other way around (Minor A specifically is a subject of this dispute), but Young cannot elicit what the minors told Young about their prior prostitution and wanting to do business by posting on Backpage.[1] But excluding the prior prostitution evidence from that cross examination robs the evidence (which even the government concedes is admissible) of most of its probative force, because the jury might automatically think that Defendant's version makes no sense: why would Minor A approach Defendant out of the blue to get help posting on Backpage?

On the practical issue, at the pretrial conference the government clarified that it would refrain from introducing coercion or grooming testimony from Agent Landau's expert testimony, and would otherwise severely limit those categories of evidence and evidence of other prostitution. The only evidence of coercion would be one instance in June 2016 in which Minor B alleges that Defendant used some amount of force against her. And the only evidence of prior prostitution would possibly be that Minors A and B met Defendant while walking the stroll (though the government would dispense with this to avoid opening the door). Defendant argued that this narrowed-down version does not resolve the objection, because he wishes to cross examine the minors, particularly Minor A, on the theory that the minors recruited the other alleged victims, including Minors D and E, into the trafficking ring without any involvement of Young.

To assist the Court in assessing the admissibility of the evidence, the Defendant shall file a Supplement to the Rule 412 Motion, detailing all of the prior-, during-, and post-prostitution activities (not involving Young) that he seeks to introduce. Defendant should also include any response to *Elbert* and *Shamsud-Din*. Defendant shall file this Supplement by **January 14, 2018.** The government must respond by **January 17, 2018.**

---

[1]Defendant also argued that the prior prostitution was relevant to showing the relationships between the minors and the involvement the minors had in each other's commercial sex ventures, as a way of rebutting Young's trafficking of them. But showing the relationships between the minors is not, by itself, a relevant fact, and certainly not one that the Confrontation Clause would require must be proven via other prostitution evidence. And *prior* prostitution evidence is also not reasonably necessary to proving how the minors (rather than Young) allegedly assisted each other *during* the charged time periods.

**Defense's Motion No. 6 (Landau testimony).** In its order before the conference, the Court denied Defendant's motion to exclude the testimony of the government's expert witness, Special Agent Carrie Landau. R. 99, Order at 13. At the pretrial conference, Defendant again argued that the victims are "experts" who are able to testify on commercial sex trafficking, and Landau's testimony would be improper bolstering of the minors' testimony. At the least, the defense argued, Landau should not testify until after the victims have testified, so that the Court may reassess whether Landau's testimony is necessary. Defendant also sought the interview statements for all of the hundreds of victim interviews that Landau has performed, in order to cross-examine the agent on her experience.

As previously explained, R. 99, Order at 13-14, Landau's testimony meets all of the Rule 702 requirements. By definition, relevant evidence is not improper "bolstering," particularly because Defendant is sure to intensely attack each minor's credibility. Nor did the defense cite any case law to support the idea that Rule 16(a)(1)(G), or any other principle of law, requires that an experience-based expert must provide all of the underlying interview reports on which the experience is based. With the earlier-noted caveats that Landau will not be testifying on coercion or grooming, the prior decision stands.

## II. Exhibits

As discussed during the pretrial conference, the objections to the government's proposed exhibit list are decided as follows:

**Photo Evidence (Exhs. 7-14).** Defendant generally objected to the photographs of the government witnesses and others involved in the alleged sex trafficking. The government proposes to use these photos to link witness testimony to other witnesses, so that the jury is oriented as to who is being discussed and because only the minors' first names will be used. At the pretrial conference, Defendant argued that he did not have information about when the photos were taken and whether the photos are fair and accurate representations of that time period. But the only foundation that is necessary may be provided by each witness, who presumably will identify the accuracy of the likeness for the relevant time period. If Defendant has a concern about a specific photo, then counsel may propose a substitution with the government. The objection is overruled and the exhibits will be allowed, subject to the foundation discussed.

**Backpage Advertisements (Exhs. 26-28).** Defendant had generally objected to the Backpage advertisements of the minors, because he had not seen the exhibits. Defendant has now seen the exhibits and has no objection. The exhibits will be allowed.

**Notebooks (Exhs. 31-32).** The Defendant generally objected to the seized notebooks, because he had not seen the exhibits. Defendant has now seen the exhibits and has no objection as long as the government lays the proper foundation. The exhibits will be allowed, subject to that foundation.

**Storage Locker Materials (Exhs. 33-36).** Defendant raised no further objections outside the previously decided motions in limine (the motion to exclude was denied, R. 99, Order at 9-10). The exhibits are allowed, subject to laying the foundation described in the order (Young owns the locker, the small size of the unit, and the type of records found).

**Phone Downloads (Exhs. 37-40).** Defendant generally objected to the phone downloads described by the government, because he had not seen the exhibits. Defendant has now seen the exhibits and objects that the records are not relevant and there is no foundation that Young was the person who sent the texts. The government proffered that the phone numbers will be tied back to Young (allegedly the phone was on him at the time of the arrest and the phone is subscribed to him). The exhibits are plainly relevant to the case, and subject to the government laying that foundation, the exhibits will be allowed.

**Phone Downloads (Exh. 41-42).** Defendant generally objected to the phone downloads, because he had not seen the exhibits. Defendant has now seen the exhibits and has no objection. The exhibits will be allowed.

**Storage Unit Lease (Exh. 59).** Defendant objected to the storage unit lease. But as discussed earlier, this is the foundation for the storage-locker documents, and is relevant for that purpose. *See* R. 99, Order at 9-10. The exhibit will be allowed.

**Post-Arrest Statements (Exhs. 62-77).** Defendant generally objected to the admission of Young's post-arrest statements, because he had not received the exhibits. At the pretrial conference, Defendant did not offer any additional statements that Young wanted to introduce under the Rule of Completeness doctrine. The exhibits will be allowed.

**Summary Charts (Exhs. 30, 51-52).** The government must tender the summary exhibits to Defendant as soon as they are created, at which time Defendant can raise any objections. Decision is reserved.

### III. Witnesses

Defendant did not have specific objections to any of the witnesses proposed by the government. He did, however, reserve his right to object to Daryl O'Neil, the Pastor of Ruach Covenant Church, because Defendant had just that day received

the interview report of O'Neil. The Court reminded the parties to raise any particular witness objections before trial if at all possible.

To better estimate the length of the trial, the Court asked whether Defendant had any current intention to call witnesses. As of now, Defendant does not intend to call any witnesses and has not decided whether he himself will testify.

### IV. Jury Instructions

The Court raised the question whether Section 1591(a)(1) requires unanimity on each of "recruits, entices, harbors, transports, provides, obtains, or maintains." Put another way, are those different verbs elements or means? If they are means, then the jury need not unanimously agree on which action Defendant committed. But if those are separate elements, then the jury must agree on which particular act (or acts) Defendant committed. The parties' respective Position Paper on Unanimity must be filed by **January 18, 2018**. The issue will be taken up again at the in-trial instructions conference, as will all remaining objections.

### IV. Trial Timing

As previously explained, the Court has set aside 8 total days for the trial. Opening statements will be 30 minutes each. The parties should be prepared for opening statements to occur immediately after jury selection is complete. The Court reserves on the length of closing arguments for now. The Court reminds parties to schedule witnesses so that there are **no gaps** during a trial day. The parties should arrive, prepared for trial, at **8:30 a.m.** on January 22, 2018.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 15, 2018