UNITED STATES MINOR DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Judge Chang |
| v. | ) | |
| | ) | No.   17 CR 082 |
| ALLEN YOUNG | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL FRE 412 MOTION**

NOW COMES, Defendant, ALLEN YOUNG, by and through his undersigned counsel, MICHAEL P. SCHMIEGE, files the following supplemental FRE 412 motion, and states as follows:

## Introduction

This Court must allow Young to inquire about the alleged victims' past in order to fully cross-examine them, develop inconsistencies and motives to lie, and rebut the allegations that he recruited, enticed, harbored, provided, or maintained by any means the alleged victims in this case.

## Analysis

The alleged victims' prior involvement in prostitution must be admitted under Federal Rule of Evidence 412(b)(C) in order to protect Mr. Young's constitutional rights; namely, the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. The Sixth Amendment provides "[i]n all criminal prosecutions the accused shall enjoy the right…to

be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. VI. The Due Process Clause of the Fourteenth Amendment has been interpreted to allow a defendant the right to present exculpatory evidence. *Chambers v. Mississippi*, 410 U.S. 284, 295-97 (1973) (a state cannot violate a defendant's rights under the Fourteenth Amendment by restricting a defendant from examining a witness through the strict application of evidentiary rules). Applying those principles to this case, Federal Rule of Evidence 412(b)(1)(C) warrants the admission of the women's prior and subsequent voluntary acts of prostitution to rebut the allegations that he recruited, enticed, harbored, provided, or maintained by any means the alleged victims in this case. Furthermore, admitting the evidence will allow YOUNG an opportunity to fully confront and cross-examine his accusers.

**MINOR A**

The FBI first interviewed MINOR A on February 10, 2015. During that interview she stated that: she knew a girl, MINOR B, that messed with a man named Papi (George Koukos), and she went with MINOR B to Papi's house but never had sex with Papi. However, MINOR B contradicts this statement and told LE that MINOR A did have sex with Papi and contracted an STD from Papi.

MINOR A further stated that MINOR B introduced MINOR A to the stroll and MINOR B told MINOR A what to do and how easy it was to make

money. MINOR A also stated that prostitutes told her that Backpage.com was best way to get johns and that another prostitute, Danielle, showed MINOR A how to use Backpage and use Vanilla gift cards.

MINOR A claims that she engaged in prostitution from the end of June, 2014 until arrested November 24, 2014. However, numerous pieces of evidence contradict this statement, including subsequent statements made by MINOR A to LE as well as countless text messages from MINOR A to her boyfriend Rickeal Hawkins. More specifically, the evidence shows that by MINOR A's own admissions worked for another individual other than Allen Young, specifically her boyfriend Rickeal Hawkins, subsequent to her arrest on November 24, 2014.

It should be noted that MINOR A does not mention Allen Young or any other "pimps," nor claim that she was working for anyone during this June – late November 2014 time period during her February 10, 2015 statement.

Subsequent to this meeting with law enforcement, MINOR A continued to contact YOUNG. From March to May 2015 they exchange numerous texts, all friendly in nature. On April 25, 2015, MINOR A solicited YOUNG for sex. YOUNG appeared to be uncomfortable with MINOR A's solicitations because MINOR A asked him to pick her up from her boyfriend's (the father of her soon to be born child) house. It appears they nonetheless

met up, and on April 29, 2015 MINOR A asked YOUNG when they were going to do it again.¹

Turmoil develops in MINOR A and YOUNG's relationship in or around May 2, 2015. MINOR A accuses YOUNG of spreading rumors that MINOR A has and STD.² Specifically, MINOR A tells YOUNG, "Bitcb you going to jail,stop lieng you know what u said u said Gia n rocky burning bye."

On May 16, 2015, MINOR A starts another argument over text messages with YOUNG, and during that argument MINOR A simultaneously discusses contacting the FBI with her "STOP-IT" counselor.³ MINOR A meets with the FBI three weeks later and for the first time tells LE about YOUNG.

The bias and motive to lie is clear – MINOR A believes that YOUNG was spreading rumors concerning her and her boyfriend having an STD. The defense should be able to question MINOR A concerning this.

MINOR A's second meeting with law enforcement was on June 11, 2015, during which she stated that she: Previously worked with pimp named Allen STRONG, and that she met him on the stroll in June 2014 with MINOR B. These statements are contradicted by her initial statement to LE. MINOR A told LE that she stopped working after becoming pregnant with her boyfriend, which is contrary to the evidence. Mr. YOUNG should be able to impeach MINOR A with her subsequent acts of prostitution to because it shows her lack of credibility, i.e. that she continuously lied to the FBI.

---

¹ Relevant text messages attached hereto as Exhibit A.
² Relevant text messages attached hereto as Exhibit B.
³ Relevant text messages attached hereto as Exhibit C.

MINOR A's third meeting with law enforcement was on November 16, 2015, during which she stated that she engaged in sex with YOUNG more than 100 times; that YOUNG would give MINOR A money; that the sexual activity would occur in YOUNG'S vehicle or at his residence; MINOR A traded photos of her breasts to YOUNG for $20 while pregnant; and that she last saw Young three weeks ago when she performed oral sex on Young in exchange for $60. All of these acts support the theory that YOUNG did not recruit, entice, harbor, provide, obtain, or maintain by any means MINOR A. Instead, this evidence shows that YOUNG was client who MINOR A freely used and manipulated. Additionally, these meeting with YOUNG subsequent to two meetings with the FBI, show that she was still engaging in prostitution contrary to her claims to LE.

**MINOR B**

MINOR B was arrested July 9, 2014 by the Chicago Police Department for prostitution when she agreed to perform a sex act on an undercover Chicago police officer. The defense should be able to cross-examine her about this arrest and the fact that she did not claim she was working for YOUNG. The following day the FBI interviewed MINOR B and during that interview she stated: that both MINOR A and MINOR B started prostituting and began dating a "Trick" nicknamed Papi and that MINOR A told MINOR B she had unprotected sex with Papi and gave him STD. This of course, impeaches the statements and anticipated testimony of MINOR A and the defense should be

able to cross-examine on this topic as it goes directly to the credibility of MINOR A. Moreover, the fact that MINOR B was working not working as a prostitute for YOUNG shows that YOUNG did not recruit, entice, harbor, provide, or maintain by any means MINOR B.

On June 19, 2015, MINOR B was arrested by the Chicago Police Department while walking stroll and told CPD she was doing it to make money; she will keep on working and nothing will stop her. During this encounter with LE, MINOR B does not mention working for YOUNG. This rebuts the allegations that YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR B. Instead, MINOR B clearly wanted to do this herself whether YOUNG was in the picture or not.

MINOR B's second meeting with law enforcement / FBI was on June 19, 2015, during which she stated: that she does not post on backpage; MINOR B contacted YOUNG after MINOR B got in argument with her mother and YOUNG said she could stay in his basement; YOUNG only wanted sex from MINOR B for her to stay with him and work security; MINOR B worked the stroll, earned money from two clients that she did not give to YOUNG; and MINOR B claimed Young just wanted to have sex.

On July 2, 2016 MINOR B was stopped by law enforcement while working "the stroll." During that encounter she stated that YOUNG recently approached her and asked her to come work for him. MINOR B said that she denied YOUNG's offer and only worked alone. At this encounter MINOR B

6

also claims that she was arrested for prostitution in Maywood, Illinois. This evidence supports defense position that MINOR B never worked with or for YOUNG. These statement to LE directly contradict her subsequent claims that she did work for YOUNG. It is important for the jury to learn that MINOR B is out there doing what she says – it corroborates her statements – that she is in fact out there and working by herself and not with/for YOUNG. The evidence, via her text messages establishes that she is posting on Backpage and not working with YOUNG.

MINOR B's third meeting with law enforcement / FBI was on July 6, 2016, during which she stated: Rickael Hawkins had MINOR A working as prostitute so he could purchase van. This supports defense theory that YOUNG was a client and not a pimp and that MINOR A was trafficked by Rickael Hawkins. This further supports the position that MINOR D was mistaken / unsure who picked her up. MINOR A claims that it was YOUNG but MINOR B claims MINOR A was prostituted by Rickeal Hawkins. Furthermore, this corroborates claims made by MINOR A that she worked for Rickeal Hawkins. In addition, this evidence is probative of MINOR A's motivation to lie. Rickeal Hawkins is the father of her child and it is reasonable to assume that she would want to protect him and thus point the finger at YOUNG. MINOR B further states that on June 21, 2016 YOUNG took her on outcalls where she made $250.00 after which YOUNG took her home. MINOR B said YOUNG did not take her money, but just wanted

MINOR B in his presence and wanted to have sex with her. This evidence shows that MINOR B was working for herself and rebuts the allegations that YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR B.

MINOR B met with law enforcement / FBI was on July 12, 2016, during which she stated that: recently, YOUNG found MINOR B on street; YOUNG wanted to start sexual relationship with MINOR B; MINOR B had dates and would use money, clothes, phone and marijuana; MINOR C is 18 and MINOR C told MINOR B she is going to work for YOUNG. The defense needs to cross-examine MINOR B's acts of prostitution before and after meeting YOUNG is relevant because it reveals her continuous and consistent claims that that she worked for herself and not pimps, or Mr. YOUNG.

**MINOR D**

MINOR D's first meeting with law enforcement was on February 18, 2016, during which she stated: that she had been involved in acts of prostitution since February 2015 (about 1 year); she was introduced to prostitution by India; she does both incalls and outcalls; two outcalls per day, 3-4 days week; outcalls located in downtown area; never worked hotels/motels; she has known MINOR A for 5-6 years; claims MINOR A does her own thing and does not work for anyone; she has spoken to MINOR A about her prostitution and MINOR A told her she only posts on Backpage and never worked stroll. MINOR D does not mention working with MINOR A

or going on outcall with her which is contrary to MINOR A's statements to law enforcement. Additionally, MINOR D also denies knowing YOUNG, and never mentions working with MINOR A or working with "pimps." All of this clearly impeaches MINOR A and rebuts that Mr. YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR A. This evidence also shows MINOR D began working as a prostitute prior to meeting YOUNG and supports YOUNG's contention that he did not recruit, entice, harbor, provide, or maintain by any means MINOR D.

MINOR D's second meeting with law enforcement was on March 14, 2016, during which she stated that she called MINOR A after FBI interview on February 18, 2016 and told her about a picture of man; MINOR A told MINOR D that she knew the man in the picture and that the man picked her up once. MINOR D claims that early 2015 she was called by MINOR A and asked to go to someone's house and she agreed to go with MINOR A; went to outcall with MINOR A; did not have sex with the client; and when she returned to car, the man did not ask for money nor talk about not having sex.

YOUNG disputes that this ever occurred. If the jury hears only this evidence it will draw the conclusion that it would have to be YOUNG driving the vehicle. They would be left thinking – who else could it be? The jury would think that this is extremely odd and strange behavior for a young woman; however, if they hear MINOR D's full background such behavior was not strange, but an insignificant event for MINOR D.

9

**Brooke McCarty**

The government intends to call Brooke McCarty as a witness to attempt to corroborate the testimony of MINOR B. During an interview with the FBI on, September 8, 2016, McCarty stated, among other things, that she had a friend named OSCAR and that OSCAR had driven her around to dates on occasion but was not a pimp. OSCAR would get a crush on different females and then would drive them around as a favor. The defense position is that this arrangement between OSCAR and MCCARTY was identical to that of YOUNG and MINOR A, B, & C. The defense should be able to cross-examine MCCARTY about this arrangement / relationship with OSCAR as it supports the defense position that this type of relationship could exist in the world of prostitution, and because a jury would likely find it unbelievable that YOUNG just wanted to be in the presence of MINOR A, B & C.

## **Conclusion**

The government wants to attempt to sanitize this case and doing so would paint an incomplete and distorted picture of what really happened in this case. The government wants the jury to believe that MINOR A and B were just innocently walking the stroll when YOUNG came by and became their pimp. The jury needs to see the whole picture – these girls were friends and experienced prostitutes. They spoke amount themselves, about their business, and the ways in which they carried out their business. MINOR B recruited MINOR A into the world of prostitution and MINOR A recruited

10

MINOR's C, D and E. Without evidence of the prior and post prostitution activities the jury will be left with and inaccurate picture that suggests certain events just happened out of the blue. The complete picture that includes this evidence shows that YOUNG did not recruit, entice, harbor, provide, or maintain by any means any of the complaining witnesses in this case.

WHEREFORE, the defendant respectfully requests that this Court grant his motion.

Respectfully Submitted,
By: s/ Michael P. Schmiege
Michael P. Schmiege
Attorney for Defendant

Michael P. Schmiege
Law Offices of Michael P. Schmiege, PC
33 East 1st Street, Second Floor
Hinsdale, Illinois 60521
(312) 626-2400 TEL
(312) 626-2401 FAX
mikeschmiege@gmail.com
IL ARDC 6287317