UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 17 CR 82 |
|---|---|
| v. | Judge Edmond E. Chang |
| ALLEN YOUNG | |

**GOVERNMENT'S SUPPLEMENTAL FILING ON MOTIONS IN LIMINE**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby sets forth its position on several issues reserved at the Final Pretrial Conference in this case.

I. **THE COURT SHOULD PROHIBIT CROSS-EXAMINATION ABOUT BROOKE MCCARTY'S HISTORICAL DRUG USE**

Defendant sought to admit past and present use of drugs by government witnesses. R. 71. The government opposed the request as overly broad. R. 86. This Court ruled that for evidence of drug use to be admissible, defendant must have a good-faith basis to ask whether a particular witness was under the influence of drugs at the time of a specific event. R. 99.

At the final pretrial conference, defendant argued that he should be allowed to ask questions about the drug use of government witness Brooke McCarty. The government expects McCarty will testify that defendant picked her up at the Shamrock Hotel, where she had done heroin and crack cocaine, and was "dope sick" from withdrawal. In the car, defendant offered to provide McCarty with heroin and asked her to come back to his house, where he had a girl he said he needed help with.

Defendant then bought McCarty heroin before bringing her back to his basement. McCarty will testify about what she observed in the basement, including the young girl, and going on "calls" with this girl and defendant. Throughout the period of time she lived in defendant's basement, defendant supplied McCarty with heroin each day. McCarty was addicted to heroin from approximately age 19 to age 29. She is currently 31 years old and in a methadone program.

Regarding her memory, the government expects McCarty will testify that her heroin use made her memory of some things fuzzy, but that heroin never made her hallucinate or imagine things that did not really happen. She will testify that she was going through heroin withdrawal when she met defendant and that she used heroin daily during the events about which she will testify. The government does not object to cross-examination about her drug use during these events, because it relates to a possible inability to recollect and relate. *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007).

The government does object, however, to questioning McCarty about her history of drug addiction in general. McCarty will admit that her heroin use affected her memory. She makes no distinction as to whether her memory problems are based on her past heroin use or the fact that she was high at the time of the events. The jury will receive a complete picture of how her memory is impacted by drug use, and defendant will have ample opportunity to challenge her credibility. The jury also will hear that McCarty was going through withdrawal and thus had used heroin before meeting defendant. But defendant seeks to admit her history of addiction so that the

2

jury will discount her testimony as untruthful, which is the type of character attack that is prohibited. *United States v. Cameron,* 814 F.2d 403, 405 (7th Cir. 1987); *United States v. Neely,* 980 F.2d 1074, 1081 (7th Cir. 1992); *United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992). Additional questions about her memory add nothing to the credibility challenge. If Brooke were clean at the time of the events and the defense sought to impeach her credibility with historical memory loss based on drug use, the probative value of that evidence would be greater; the jury would have no other way of knowing about possible problems with the witness's memory. Here, the jury will receive an adequate explanation of any fuzziness with the witness's memory based on drug use. Questions about the duration of her addiction therefore should be barred.

## II. THE COURT SHOULD LIMIT CROSS-EXAMINATION ABOUT WITNESSES' USE OF ALIASES

At the Final Pretrial Conference, defense counsel sought unredacted versions of government witnesses' criminal histories so that they could prepare to cross-examine these witnesses about their use of aliases and false dates of birth. The government has provided those records. While there is some impeachment value to a witness's use of an alias, the Court should limit the scope and frequency of any questions on this topic.

The government does not dispute that use of an alias can be relevant to a witness's credibility. *See United States v. Mansaw*, 714 F.2d 785, 789 (8th Cir. 1983) ("A witness' use of false names or false identities is a proper subject of cross-examination under Fed. R. Evid. 608."); *see also United States v. Glover*, 755 F.3d 811,

817 (7th Cir. 2014) (omission of informant's prior use of aliases to deceive police deprived judge of meaningful credibility information). Several government witnesses have used aliases in the past.

The cross-examination should be limited in scope and duration. *See Thompson v. City of Chicago*, 722 F.3d 963, 976–78 (7th Cir. 2013). In *Thompson*, the district court permitted questioning about 12 specific occasions on which a defendant used a false name "during an important event in [his] life," in an attempt to sanitize the fact that the defendant had provided aliases during arrests. 722 F.3d at 977. The Seventh Circuit determined that this approach resulted in unfair prejudice to the defendant:

> This litany of false names used "during an important event in your life" presented the jury with an unmistakable and detailed picture of Thompson's arrest history, particularly when the inquiry culminated with a question specifically addressed to Thompson's use of an alias on the date of his arrest by the defendants. The defendants insist that there is no reason to suppose the jurors connected the dots between "important events" and arrests. An "important event," they point out, "could [be] almost anything," including "a wedding, . . . the birth of a child, . . . starting a new job or business venture, or a host of other situations." This is nonsense. We are quite sure that no juror failed to grasp that the 12 "important events" were arrests.

*Id.*

Similarly, allowing defense counsel to ask the witnesses about their use of aliases during "contact with law enforcement" will allow defendant to backdoor information about the witnesses' prior arrests and convictions that have been properly excluded. While it is of some relevance that witnesses made these statements to law enforcement, the relevance is outweighed by the prejudice caused to the witnesses by admitting their entire arrest history. If a jury could connect the

4

dots between "important events" and arrests in *Thompson*, asking about law enforcement contact raises an even greater concern.

The Seventh Circuit also took issue with the extent of the cross-examination on this topic, stating that, "[a] single question about [defendant's] use of an alias during the September 21, 2002 arrest would have sufficed, perhaps accompanied by a summary question confirming that he had used a false name on other occasions as well." *Thompson,* 722 F.3d at 977. Similarly, any cross of witnesses on this topic should be limited to a single summary question that does not refer to a specific date.

## III. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court exclude questions about Brooke McCarty's historical drug addiction and limit cross-examination about the witnesses' use of aliases.

    Respectfully submitted,

    JOHN R. LAUSCH, JR.
    United States Attorney

By:   *s/ Christine M. O'Neill*
    ANDRIANNA D. KASTANEK
    CHRISTINE M. O'NEILL
    Assistant United States Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5300