UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 17 CR 00082 |
| v. | ) ) ) | Judge Edmond E. Chang |
| ALLEN YOUNG, | ) ) | |
| Defendant. | ) | |

### ORDER

At the January 9, 2018 pretrial conference, the Court ordered additional briefing on Defendant's motion to admit evidence of witnesses' acts of prostitution under Federal Rule of Evidence 412. Both the government and the Defendant have filed additional position papers on the issue. The motion is granted in part, denied in part, and reserved in part as detailed below.

### I. Background

Under Rule 412, in a criminal proceeding involving alleged sexual misconduct, evidence offered to prove a victim's sexual predisposition or that a victim engaged in other sexual behavior is generally prohibited. Here, Defendant has argued that the proposed evidence is admissible under an exception to Rule 412's bar, because in a criminal case the Court must admit evidence whose "exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). After extensive discussion at the pretrial conference, the Court ordered Defendant to supplement the motion in limine with the specific proposed evidence of prostitution activity. After the pretrial conference, the Court granted the government's motion to narrow the indictment by dropping the "recruit" and "entice" elements/means[1] from 18 U.S.C. § 1591(a)(1). Defendant filed the supplement, R. 114, and the government responded, R. 119. What follows are the decisions for each specified piece of evidence.

---

[1] Whether "recruit" and "entice" are elements or means is the subject of an instructions dispute.

## II. Analysis

The decisions on each piece of evidence can be split up into four categories: (1) evidence of prior or subsequent prostitution; (2) improper impeachment evidence; (3) relevant prostitution evidence during charged time periods; and (4) non-sexual fact evidence. The former two are inadmissible; the latter two are allowed. For a few pieces of evidence, more information is needed before deciding, so those are reserved. The four grounds for decision are described next, followed by a chart that specifies which category covers a specific piece of evidence.

**1. Evidence of prior or subsequent prostitution outside the charged time periods**. As noted above, Rule 412 generally bars evidence of prior or subsequent prostitution to prove other sexual behavior, and that form of evidence raises the prototypical concern that the jury will rely on unfairly prejudicial character judgments against the minors and will attach outsized relevance to other prostitution activity, when the actual issue at trial is whether Defendant trafficked them, not whether someone else trafficked them or whether they engaged in prostitution themselves before or after the charged time periods. This is especially true now that the indictment has been narrowed so that "recruit" and "entice" are no longer elements/means of the charges. So excluding prior or subsequent prostitution activity is no longer reasonably necessary under the Confrontation Clause or the Due Process Clause. Defendant's argument that the element/means of "maintains" warrants the evidence is rejected: "maintains" is narrower than "recruit" or "entice," and prior or subsequent prostitution activity does not bear on whether Defendant allegedly maintained the minors (or, at the least, even if it has some modest probative value, it is substantially outweighed by the unfair prejudice of an improper character evaluation by the jury, Fed. R. Evid. 403). Prior or subsequent prostitution is inadmissible and do not fall into a Rule 412 exception.

**2. Improper impeachment evidence**. Several of Defendant's proposals actually assume that he *must* be able to introduce *any* evidence of sexual activity when a minor has either (a) made an inconsistent statement about it or (b) some other witness or evidence contradicts the minor's statement about the sexual activity (or the absence of sexual activity). But Rule 412 applies to all evidence "whether offered as substantive evidence or for impeachment …." Fed. R. Evid. 412, 1994 Advisory Committee Notes. Put another way, evidence of other prostitution activity does not become admissible merely because the evidence contradicts the minor's statement that is *itself* collateral to the charges or, worse, not even admissible. *United States v. Kozinski*, 16 F.3d 795, 806-06 (7th Cir. 1994) ("one may

2

not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission").[2] And the Court concludes, after a careful review, that the proposed evidence falling into this category does not bear sufficiently on truth-telling under Rule 608(b) to overcome the extreme danger of unfair character judgments against the minors. So any evidence about other sexual activity that is offered merely to contradict otherwise inadmissible statements must be excluded.

**3. Relevant prostitution evidence**. During the charged time periods, some of the proposed evidence of prostitution is relevant and is not offered for a prohibited purpose. Of course, the government itself will be offering evidence of prostitution during the charged time periods—allegedly tied to Defendant—but Defendant too is free to cross-examine the minors on prostitution during the charged time period in order to argue that the minors acted independently of Defendant or were being trafficked by someone else and not by Defendant. To be sure, the evidence is not nearly dispositive, because a victim might be trafficked by more than one person or might engage in prostitution independently and yet still be trafficked by Defendant. But the probative value of this evidence is so important that disallowing Defendant from cross-examining on the evidence during the charged time periods would likely violate his Confrontation Clause and due process rights. Fed. R. Evid. 412(1)(C).

**4. Non-sexual fact evidence**. Finally, evidence of facts that do not prove sexual behavior or sexual predisposition is not barred by the terms of Rule 412 (the motion at hand primarily addresses Rule 412). Some of the evidence in Defendant's supplement is this type of evidence, that is, does not run afoul of Rule 412 because not offered to prove sexual behavior or predisposition.

The following chart lists the defense's proposed evidence and the corresponding decision.

---

[2] The Court understands Defendant to seek not only to ask the questions on cross-examination, but to introduce extrinsic evidence of the contradiction (that is, to perfect the impeachment).

| Proposed Evidence | Decision |
|---|---|
| "The FBI first interviewed MINOR A on February 10, 2015. During that interview she stated that: she knew a girl, MINOR B, that messed with a man named Papi (George Koukos), and she went with MINOR B to Papi's house but never had sex with Papi. However, MINOR B contradicts this statement and told LE that MINOR A did have sex with Papi and contracted an STD from Papi." Def. Supp. Mot. at 2. | The evidence is **excluded**. These inconsistencies between Minors A or B are collateral to the issues at trial. Any attempt to impeach Minor A (or vice-versa with Minor B) with this evidence would be improper impeachment. |
| "MINOR A further stated that MINOR B introduced MINOR A to the stroll and MINOR B told MINOR A what to do and how easy it was to make money." Def. Supp. Mot. at 2-3. | The evidence is **excluded**. Evidence of this prior prostitution activity is precluded by Rule 412. |
| "MINOR A also stated that prostitutes told her that Backpage.com was best way to get johns and that another prostitute, Danielle, showed MINOR A how to use Backpage and use Vanilla gift cards." Def. Supp. Mot. at 3. | The evidence is **allowed**. Evidence that prostitutes taught Minor A about Backpage is not evidence of Minor A's sexual behavior, and this evidence shifts blame away from Defendant. |
| "MINOR A claims that she engaged in prostitution from the end of June, 2014 until arrested November 24, 2014. However, numerous pieces of evidence contradict this statement, including subsequent statements made by MINOR A to LE as well as countless text messages from MINOR A to her boyfriend Rickeal Hawkins. More specifically, the evidence shows that by MINOR A's own admissions worked for another individual other than Allen Young, specifically her boyfriend Rickeal Hawkins, subsequent to her arrest on November 24, 2014." Def. Supp. Mot. at 3. | The evidence is **excluded**. To the extent this paragraph talks about Minor A's subsequent prostitution (that is, after the charged time period), the evidence violates Rule 412. **But** if Defendant has a good-faith basis to attribute trafficking in late November 2014 to December 2014 (which is **encompassed** by the charged time period) to Rickeal Hawkins, then that specific evidence is **admissible** under 412(b)(1)(C). |

| | |
|---|---|
| "Subsequent to this meeting with law enforcement, MINOR A continued to contact YOUNG. From March to May 2015 they exchange numerous texts, all friendly in nature. On April 25, 2015, MINOR A solicited YOUNG for sex. YOUNG appeared to be uncomfortable with MINOR A's solicitations because MINOR A asked him to pick her up from her boyfriend's (the father of her soon to be born child) house. It appears they nonetheless met up, and on April 29, 2015 MINOR A asked YOUNG when they were going to do it again." Def. Supp. Mot. at 3-4. | Decision on this evidence is **reserved.** Friendly text exchanges do not make it more or less likely that Young trafficked Minor A. If, however, Minor A testifies that Young used any force, fraud, or coercion, then the texts might be admissible to undermine that testimony. The Court notes that some of the attached texts do not necessarily prove "other sexual behavior" in any event, so Rule 412 would not be the obstacle to admission. |
| "Turmoil develops in MINOR A and YOUNG's relationship in or around May 2, 2015. MINOR A accuses YOUNG of spreading rumors that MINOR A has and STD. Specifically, MINOR A tells YOUNG, 'Bitcb you going to jail,stop lieng you know what u said u said Gia n rocky burning bye.' On May 16, 2015, MINOR A starts another argument over text messages with YOUNG, and during that argument MINOR A simultaneously discusses contacting the FBI with her "STOP-IT" counselor. MINOR A meets with the FBI three weeks later and for the first time tells LE about YOUNG." Def. Supp. Mot. at 4. | The evidence is **allowed.** None of this evidence is offered to prove Minor A's sexual behavior or predisposition, and instead is offered to show bias against Defendant. For this line of cross, all that it necessary is that the defense offer to prove that Minor A *believed* that Defendant was spreading the rumors. The truth or not of the rumors need not be proven (and cannot be argued by the defense), but that would not be the purpose of the evidence. This evidence goes to bias and does not violate Rule 412. |

| | |
|---|---|
| "MINOR A's second meeting with law enforcement was on June 11, 2015, during which she stated that she: Previously worked with pimp named Allen STRONG, and that she met him on the stroll in June 2014 with MINOR B. These statements are contradicted by her initial statement to LE. MINOR A told LE that she stopped working after becoming pregnant with her boyfriend, which is contrary to the evidence. Mr. YOUNG should be able to impeach MINOR A with her subsequent acts of prostitution to because it shows her lack of credibility, i.e. that she continuously lied to the FBI." Def. Supp. Mot. at 4. | The evidence is **excluded.** Because Defendant is trying here to elicit evidence of Minor A's alleged *subsequent* acts of prostitution (that is, outside the charged time periods), the evidence goes to a collateral matter. Whether Minor A continued engaging in commercial sex is immaterial to the question of whether Young trafficked her from June to December 2014, this would be improper impeachment. |
| "MINOR A's third meeting with law enforcement was on November 16, 2015, during which she stated that she engaged in sex with YOUNG more than 100 times; that YOUNG would give MINOR A money; that the sexual activity would occur in YOUNG'S vehicle or at his residence … All of these acts support the theory that YOUNG did not recruit, entice, harbor, provide, obtain, or maintain by any means MINOR A. Instead, this evidence shows that YOUNG was client who MINOR A freely used and manipulated." Def. Supp. Mot. at 5. | The evidence is tentatively **allowed.** As noted during the pretrial conference (when discussing the government's motion to allow evidence of Minor A's sexual contact with Young as a "thing of value" under § 1591(a)(2), it appears that the government already will be offering this evidence and that it is not in dispute. Really the parties simply have a different characterization of what inferences should be drawn from the evidence, which is what the jury will decide. |
| "MINOR A traded photos of her breasts to YOUNG for $20 while pregnant; and that she last saw Young three weeks ago when she performed oral sex on Young in exchange for $60." Def. Supp. Mot. at 5. | The evidence is **excluded.** Rule 412 squarely bars this evidence of other sexual behavior. |
| "Additionally, these meeting with YOUNG subsequent to two meetings with the FBI, show that she was still engaging in prostitution contrary to her claims to LE." Def. Supp. Mot. at 5. | The evidence is **excluded.** This evidence would impeach a collateral matter, that is, prostitution activity outside the charged time period. |

| | |
|---|---|
| "MINOR B was arrested July 9, 2014 by the Chicago Police Department for prostitution when she agreed to perform a sex act on an undercover Chicago police officer. The defense should be able to cross-examine her about this arrest and the fact that she did not claim she was working for YOUNG." Def. Supp. Mot. at 5. | The evidence is **excluded.** There is no factual premise for impeachment by omission. The motion proffers only that Minor B "did not claim" that she was working for Defendant. But there is no reason to believe (at least on the record before the Court) that she was asked about whom she was working for. |
| "The following day the FBI interviewed MINOR B and during that interview she stated: that both MINOR A and MINOR B started prostituting and began dating a 'Trick' nicknamed Papi and that MINOR A told MINOR B she had unprotected sex with Papi and gave him STD. This of course, impeaches the statements and anticipated testimony of MINOR A and the defense should be able to cross-examine on this topic as it goes directly to the credibility of MINOR A." Def. Supp. Mot. at 5-6. | The evidence is **excluded.** For the same reasons discussed earlier, these inconsistencies between Minors A or B are collateral to the issues at trial. Any attempt to impeach Minor A (or vice-versa with Minor B) with this evidence would be improper impeachment. |
| "On June 19, 2015, MINOR B was arrested by the Chicago Police Department while walking stroll and told CPD she was doing it to make money; she will keep on working and nothing will stop her. During this encounter with LE, MINOR B does not mention working for YOUNG. This rebuts the allegations that YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR B. Instead, MINOR B clearly wanted to do this herself whether YOUNG was in the picture or not." Def. Supp. Mot. at 6. | The evidence is **excluded.** In light of the narrowing of the indictment, the evidence is not relevant and is barred by Rule 412. Also, absent evidence that Minor B was specifically asked by law enforcement whether she was working for someone, the fact that she did not mention Defendant provides no factual premise for impeachment by omission. |
| "MINOR B's second meeting with law enforcement / FBI was on June 19, 2015, during which she stated: that she does not post on backpage …" Def. Supp. Mot. at 6. | The evidence is tentatively **excluded.** The statement is collateral **unless** the government introduces evidence that Minor B did post on Backpage. If that happens, ten then Defendant may offer the statement for |

| | |
|---|---|
| | impeachment—if Minor B was saying that she has *never* posted on Backpage (as opposed to explaining she did not *currently* post on Backpage in June 2015). |
| "MINOR B's second meeting with law enforcement / FBI was on June 19, 2015, during which she stated: … MINOR B contacted YOUNG after MINOR B got in argument with her mother and YOUNG said she could stay in his basement; YOUNG only wanted sex from MINOR B for her to stay with him and work security; MINOR B worked the stroll, earned money from two clients that she did not give to YOUNG; and MINOR B claimed Young just wanted to have sex." Def. Supp. Mot. at 6. | The evidence is **allowed.** The evidence is not offered to prove Minor B's sexual behavior or predisposition under Rule 412. Based on discussion at the pretrial conference, there is no dispute that Minor B stayed with and had sex with Defendant. Rather, each side has different theories as to whether Defendant was a trafficker or a customer. The two sides are free to argue those different case theories to the jury. The statements, even to the extent they are *about* sex are not offered to prove any *other* sexual behavior or predisposition, and thus do not violate Rule 412. |
| "On July 2, 2016 MINOR B was stopped by law enforcement while working 'the stroll.' During that encounter she stated that YOUNG recently approached her and asked her to come work for him. MINOR B said that she denied YOUNG's offer and only worked alone." Def. Supp. Mot. at 6. | The evidence is **allowed.** The indictment charges Defendant with trafficking Minor B "in or about June 2016." The statements offer a direct contradiction to the government's contention that Minor B worked for Defendant during that time. The evidence may only be offered for that contradiction, rather than any propensity purpose. Rule 412(b)(1)(C) demands that Defendant be able to offer this evidence |
| "At this encounter MINOR B also claims that she was arrested for prostitution in Maywood, Illinois." Def. Supp. Mot. at 6-7. | The evidence is **excluded.** Evidence of subsequent prostitution violates Rule 412. |
| "The evidence, via her text messages establishes that she is posting on Backpage and not working with YOUNG." Def. Supp. Mot. at 7. | Decision on this evidence is **reserved.** If the texts are from the June-July 2016 time period, then they would be relevant to refuting the charge that Defendant trafficked Minor B "in or about June 2016." But the texts might reach a Rule 403 tipping point. Defendant must file (under seal or redacted as needed) the texts as an exhibit to the Rule 412 motion by **January 31, 2018**. |

| | |
|---|---|
| "MINOR B's third meeting with law enforcement / FBI was on July 6, 2016, during which she stated: Rickael Hawkins had MINOR A working as prostitute so he could purchase van. This supports defense theory that YOUNG was a client and not a pimp and that MINOR A was trafficked by Rickael Hawkins. This further supports the position that MINOR D was mistaken / unsure who picked her up. MINOR A claims that it was YOUNG but MINOR B claims MINOR A was prostituted by Rickeal Hawkins. Furthermore, this corroborates claims made by MINOR A that she worked for Rickeal Hawkins. In addition, this evidence is probative of MINOR A's motivation to lie. Rickeal Hawkins is the father of her child and it is reasonable to assume that she would want to protect him and thus point the finger at YOUNG." Def. Supp. Mot. at 7. | Decision on this evidence is **reserved.** Although the meeting with law enforcement was in July 2016, it is unclear what time period Minor B was discussing. *If* Minor B saw Hawkins prostitute Minor A during the charged time period, then the evidence rebuts the contention that Defendant trafficked Minor A. That evidence would be admissible under Rule 412(b)(1)(C). If Minor B told this to law enforcement based on statements made to her by Minor A (in contrast to personally observing it), then Defendant might be able to perfect the impeachment of Minor A on this point by cross-examining Minor B on the statements. If Minor B was referring to periods **outside** of those charged in the indictment as to Minor A, then the evidence is barred by Rule 412. Defendant shall attach the pertinent report and describe the time period in the Additional Supplement due by **January 31, 2018**. |
| "MINOR B further states that on June 21, 2016 YOUNG took her on outcalls where she made $250.00 after which YOUNG took her home. MINOR B said YOUNG did not take her money, but just wanted MINOR B in his presence and wanted to have sex with her. This evidence shows that MINOR B was working for herself and rebuts the allegations that YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR B." Def. Supp. Mot. at 7-8. | This evidence is **allowed.** The alleged events took place in the charged period as to Minor B, so they are not prior or subsequent prostitution. It appears that the parties simply disagree on whether this qualifies as Defendant having obtained anything of value. |
| "MINOR B met with law enforcement / FBI was on July 12, 2016, during which she stated that: recently, YOUNG found MINOR B on street; YOUNG wanted to start sexual relationship with MINOR B …" Def. Supp. Mot. at 8. | The evidence is **allowed** (or at least not barred by Rule 412). The evidence is not covered by Rule 412, because it does not prove sexual behavior or predisposition by Minor B so long as the evidence avoids using on the "street" and instead simply elicits that Defendant proposed a sexual |

| | |
|---|---|
| | relationship with Minor B. |
| "…MINOR B had dates and would use money, clothes, phone and marijuana; …" Def. Supp. Mot. at 8. | Decision on the evidence is **reserved**. If the evidence of "dates" is from the charged time period, then it would be allowed. Defendant shall address the time period (including attaching the report as needed) in the Additional Supplement due by **January 31, 2018**. |
| "…MINOR C is 18 and MINOR C told MINOR B she is going to work for YOUNG." Def. Supp. Mot. at 8. | The evidence is tentatively **excluded.** Based on the July 2016 interview, Minor B seems to be referring to acts *after* the charged period for Minor C (the charged period is in or about 2014 and continuing until in or about 2015), which violates Rule 412. Defendant may proffer any evidence that Minor B was referring to the charged time period for Minor C in the Additional Supplement by **January 31, 2018**. |
| "The defense needs to cross-examine MINOR B's acts of prostitution before and after meeting YOUNG is relevant because it reveals her continuous and consistent claims that that she worked for herself and not pimps, or Mr. YOUNG." Def. Supp. Mot. at 8. | The evidence is **excluded.** Prior and subsequent acts of prostitution are direct violations of Rule 412 and are irrelevant (or, at least, violate Rule 403) to proving that Young did not traffic Minor B during the charged periods. |
| "MINOR D's first meeting with law enforcement was on February 18, 2016, during which she stated: that she had been involved in acts of prostitution since February 2015 (about 1 year) …" Def. Supp. Mot. at 8. | The evidence is **excluded.** Because the attempt charge as to Minor D pertains to the one occasion where no commercial sex act occurred, then the testimony is not a direct contradiction of the charge and would violate Rule 412. |
| "[Minor D] was introduced to prostitution by India; she does both incalls and outcalls; two outcalls per day, 3-4 days week; outcalls located in downtown area; never worked hotels/motels; …" Def. Supp. Mot. at 8. | The evidence is **excluded.** As explained above, this type of prior prostitution evidence violates Rule 412 and is not relevant (or, at least, would violate Rule 403) to whether Young attempted to traffic Minor D on the charged occasion. |
| "[Minor D] has known MINOR A for 5-6 years …" Def. Supp. Mot. at 8. | The evidence is **allowed** (or at least not barred by Rule 412). The length of the relationship is not offered to show sexual behavior, so Rule 412 is not triggered. |

| | |
|---|---|
| " [Minor D] claims MINOR A does her own thing and does not work for anyone …" Def. Supp. Mot. at 8. | Decision on the evidence is **reserved.** If Minor D was referring to the time that Defendant is charged with trafficking Minor A, then the evidence is admissible to directly rebut the government's contention that Defendant trafficked Minor A. The evidence is inadmissible if Minor D is not referring to the charged time period (or if Minor D has no foundation for this assertion). Defendant shall address the time period in the Additional Supplement due by **January 31, 2018**. |
| "…[Minor D] has spoken to MINOR A about her prostitution and MINOR A told her she only posts on Backpage and never worked stroll." Def. Supp. Mot. at 8. | The evidence is **excluded.** Whether Minor A walked the stroll before meeting Defendant is collateral, so impeaching Minor A on that point is improper impeachment. |
| "MINOR D does not mention working with MINOR A or going on outcall with her which is contrary to MINOR A's statements to law enforcement." Def. Supp. Mot. at 8-9. | The evidence is **allowed, but limited.** If Minor D was asked in an interview to describe all of her prostitution activities (so the description overlaps the time of the attempt charge), then the evidence is admissible to rebut the evidence that Defendant attempted to traffic Minor D along with Minor A. But Defendant can only ask Minor D about the omission, and cannot otherwise introduce evidence of other prostitution by Minor D. |
| "Additionally, MINOR D also denies knowing YOUNG …" Def. Supp. Mot. at 9. | The evidence is **allowed.** Minor D's statement that she does not know Defendant is relevant to refuting that Defendant attempted to traffic her, and is not offered to prove sexual behavior predisposition. |
| "…and never mentions working with MINOR A or working with 'pimps.' All of this clearly impeaches MINOR A and rebuts that Mr. YOUNG recruited, enticed, harbored, provided, or maintained by any means MINOR A. This evidence also shows MINOR D began working as a prostitute prior to meeting YOUNG and supports YOUNG's contention that he | The evidence is **excluded**, aside from the impeachment by omission that Minor D did not say that she worked with Minor A. Other than that, evidence Minor D's prior prostitution is barred by Rule 412. |

11

| | |
|---|---|
| did not recruit, entice, harbor, provide, or maintain by any means MINOR D." Def. Supp. Mot. at 9. | |
| "MINOR D's second meeting with law enforcement was on March 14, 2016, during which she stated that she called MINOR A after FBI interview on February 18, 2016 and told her about a picture of man; MINOR A told MINOR D that she knew the man in the picture and that the man picked her up once. MINOR D claims that early 2015 she was called by MINOR A and asked to go to someone's house and she agreed to go with MINOR A; went to outcall with MINOR A; did not have sex with the client; and when she returned to car, the man did not ask for money nor talk about not having sex." Def. Supp. Mot. at 9. | The evidence is **allowed.** Minor A's statement to Minor D goes to the reliability of Minor D's later identification of Defendant as the person who attempted to traffic her. The remainder of the evidence will be substantially introduced by the government as the basis for the attempt. |
| "The government intends to call Brooke McCarty as a witness to attempt to corroborate the testimony of MINOR B. During an interview with the FBI on, September 8, 2016, McCarty stated, among other things, that she had a friend named OSCAR and that OSCAR had driven her around to dates on occasion but was not a pimp. OSCAR would get a crush on different females and then would drive them around as a favor. The defense position is that this arrangement between OSCAR and MCCARTY was identical to that of YOUNG and MINOR A, B, & C. The defense should be able to cross-examine MCCARTY about this arrangement / relationship with OSCAR as it supports the defense position that this type of relationship could exist in the world of prostitution, and because a jury would likely find it unbelievable that YOUNG just wanted to be in the presence of MINOR A, B & C." Def. Supp. Mot. at 10. | The evidence is **excluded.** Evidence of witness McCarty's prior prostitution is not relevant to the charges. And introducing evidence of another relationship in order to draw an analogy to this case is rejected: anecdotal evidence of this other relationship has no bearing on the likelihood of Defendant having that same sort of relationship. |

The government may respond to the Additional Supplement by **February 6, 2018**.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 20, 2018